[No. 19154. Department One. September 3, 1925.]

OPPORTUNITY CHRISTIAN CHURCH et al., Appellants, v. WASHINGTON WATER POWER COMPANY et al., Respondents.[1]

CORPORATIONS (88)—ACTION BY STOCKHOLDERS—SUING ON BEHALF OF CORPORATIONS—RELATIONSHIP—TRUSTS. The stockholders of a private corporation cannot maintain an action to enforce a corporate contract, on the refusal of its officers to do so, in the absence of fraudulent, arbitrary or *ultra vires* acts by the trustees; and this rule applies to a mutual water company not organized for profit, and claimed to be only a trustee for its stockholders in the making of a contract for electricity for their benefit.

SAME (87)—ACTION BY STOCKHOLDERS—ON BEHALF OF CORPORATION —PARTIES—PRIVITY OF CONTRACT. While the stockholders in a mutual water company may have a right of action against the company to furnish them electricity, they cannot maintain an action against a power company on its contract to furnish electricity to the water company, there being no privity of contract.

SAME (88)—ACTION BY STOCKHOLDERS—REFUSAL OF OFFICERS TO SUE—ULTRA VIRES ACTS. It cannot be claimed that corporate trustees acted *ultra vires* in refusing to bring suit on a corporate contract, where they acted on the advice of counsel, and exercised their discretion in good faith.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 17, 1924, dismissing a stockholders' action to enjoin the breach of a contract, after a trial upon the merits before the court. Affirmed.

*Graves, Kizer & Graves,* for appellants.

*Post & Russell,* for respondents.

BRIDGES, J.—It is our opinion that the appellants are not in position to maintain this action.

There is certain fertile land in the Spokane valley which is quite valueless without irrigation. Water can be had only from wells. About 1905, three men owned

[1]Reported in 238 Pac. 641.

some three thousand acres of this land, and desired to develop and sell it. They organized two corporations; one called Modern Irrigation & Land Company, and the other, Modern Electric Water Company. To the land company they conveyed the land they owned. Thereafter a contract was entered into between them and the two corporations thus formed. It required the land company to sink wells necessary for obtaining water for both domestic and irrigating purposes and to construct distributing systems. It was also to construct a proper pole line for conveying electricity to the various tracts of land. The water company obligated itself to operate the wells and to distribute the water and the electricity. Its capital stock was divided into 3,000 shares, which were issued to the original incorporators. It was the intention to sell the land in small tracts, generally of five or ten acres. Every purchaser was to receive one share of the water company's stock for each acre of land purchased and owned by him, and thus he was to become a stockholder in the water company.

The right to receive water and electricity for certain purposes ran with the ownership of land. To carry out this plan, the original incorporators transferred to the land company all of the 3,000 shares of the capital stock of the water company, except sufficient to qualify the board of trustees. The whole scheme seems to have been successful. Within a reasonable time the land was sold and developed. A village named Opportunity grew up in the midst. The water company, which was obligated to distribute water for irrigation and domestic purposes and also electric energy, did not have any electric power plant. It soon, however, entered into a contract with a large quasi-public corporation, from which it purchased at designated

prices enough electric energy to operate the wells and to furnish electricity for the usual domestic purposes, which for a long time was used merely for lighting purposes. After the first contract of five years had expired, the water company made a similar contract with another power company, and that in turn expired and it then made a somewhat similar contract with the Washington Water Power Company, which is still in force. As the village grew, certain persons began to use electricity for purposes other than for lighting, and this case is solely about such electric energy.

Not long before the commencement of this suit, the power company notified the water company that it would no longer furnish electricity for power purposes, for the reason, among others, that so to do would amount to an unlawful discrimination, and demanded that the water company cease selling such electric power from any electric energy received from it. Some conferences were held between the officers of the two companies, at which the difficulties were attempted to be adjusted, but the power company would not yield. The water company submitted the whole proposition to eminent counsel, who advised its trustees that the position taken by the power company was correct and that it had a right to refuse to furnish electricity for power purposes, and that any suit by the water company against it to require it to furnish electricity for such purposes would fail. Acting upon this advice and on their own judgment, the board of trustees of the water company concluded to accept the demands of the power company. Thereafter certain of the stockholders of the water company demanded of its trustees that suit be brought against the power company to require it to furnish electricity for the purposes mentioned, contending that the contract between the two

companies imposed that duty on the power company. The trustees refused to comply with this demand, basing their refusal on the grounds we have heretofore mentioned. Thereupon the appellants (being a minority of the stockholders) brought this suit against the power company, the water company and the trustees of the latter, the real purpose of which was to require the power company to furnish the electric energy under discussion. The trial court held that the action could be maintained only by the water company, and dismissed the suit.

Generally speaking, stockholders of a private corporation may not, in the absence of fraudulent, arbitrary or *ultra vires* acts or conduct on the part of the trustees of the corporation, bring suit on behalf of the corporation to enforce a contract made by it. 14 C. J. 927; Clark on Corporations (2d ed.), 375. The principle of law above stated may not be entirely accurate because not entirely complete, but it is sufficient for the purposes of this action. There is nothing in the case to show that the board of trustees of the water company, in refusing to maintain this action on behalf of the water company, acted in a fraudulent, arbitrary or *ultra vires* manner or in bad faith. On the contrary, it quite conclusively appears that it acted not only within its powers, but after due deliberation, and only upon the advice of counsel learned in the law, supported by their own deliberate conclusions. Indeed, the contrary is not seriously contended by the appellants, but they contend that the general rules of law above stated, and on which the trial court dismissed the action, are not controlling under the particular facts of this case.

They contend that the relationship between the water company and the appellants is not that which exists

between the usual private business corporation and its stockholders, but that, under the peculiar facts of the case, the corporation is nothing but an agency through which the stockholders, who are the landowners, are to acquire their rights; that the relationship is more in the nature of that existing between a trustee and *cestui que trust* than between a strictly private corporation organized for profit and its stockholders, and they assert that, because of this situation, the water company is "purely a trustee for its shareholders; that they alone had the substantial interest in the contract for electric power which was made in its name, and it had no other than a representative interest therein; and that, while suit respecting that contract might have been maintained by or against it, it would have sued or defended as the trustee of an express trust and not otherwise. It follows necessarily that, when it refused to take action to protect the interest of its *cestuis que trustent,* they were entitled to take any proper steps for their own protection."

The argument is plausible and ingenious, but, in our opinion, to adopt it would be very dangerous and would in the long run have the effect of entirely disregarding the long-standing fundamental rules of law to the effect that a stockholder of a private corporation may not maintain a suit on behalf of the corporation to redress wrongs done to it. Business of all kinds and natures is transacted by private corporations, and the only safe rule to follow is that in all such instances the corporation is a separate entity to be controlled by its board of trustees while acting in good faith and within their power, and that it alone is the absolute owner of all of its property and rights, which may be protected and enforced only by it through its officers, and seldom, if ever, through the individual

action of a stockholder, so long as the trustees act within their power and in good faith. To hold as appellants would persuade us would be to at once recognize and authorize similar suits to be brought under all circumstances by stockholders of the many mutual or cooperative corporations now doing business in this state, for there the relationship contended for by appellants more plainly appears than here. Such a doctrine would make it almost impossible for many corporations to continue doing business, because third persons would refuse to enter into contracts with them if they may be subjected to suit by the individual stockholders. While the business of the water company is of a somewhat unusual nature and it has in the past furnished, and may in the future furnish, electricity to its stockholders without profit to it, yet, taking the situation as a whole, we cannot see any substantial difference in the relationship between this corporation and its stockholders and those of any ordinary private corporation and its stockholders.

Appellants cite a number of cases in support of their theory, but, while we have read all of them, we are of the belief that they do not support the propositions advanced to us. We cannot take the space to review more than two or three of them. Those not reviewed are similar to those we will particularly notice. In the case of *Stuart v. Davis*, 25 Colo. App. 568, 139 Pac. 577, the action was between the stockholder and his corporation. There was no question of a third person. The real question involved was the right of a mutual water company to change or refuse to maintain a water ditch which, by contract, was to be maintained for the benefit of its stockholders.

In the case of *Miller v. Imperial Water Co.*, 156 Cal. 294, 103 Pac. 227, the court held that mandamus was a

proper action to compel a corporation, organized to secure a supply of water for irrigation purposes and distribute the same to its various stockholders, to compel the water company to deliver water for irrigation purposes to one of its stockholders under a contract for that purpose. The court incidentally held that the stockholder's right to have the water furnished his land was an inseparable adjunct to his ownership of stock in the company. So here, it may be that the respondent water company has a duty to furnish electricity to the appellants and that that obligation runs with the land and is inseparable from it. But it does not follow from that situation that the water company is a pure trustee on the one hand and the appellants merely *cestuis que trustent* on the other.

In the case of *Eldridge v. Mill Ditch Co.*, 90 Ore. 590, 177 Pac. 939, certain language was used which, in a general way, tends to support the views of the appellants, but the facts of that case are so different from those here that we think the language ought not to be made applicable to this case. The question there was whether water rights, ditches, etc., held by a mutual water serving company for the benefit of its members could be levied upon and sold to satisfy an execution against the corporation. It was in discussing this question that the court held that the relationship of the corporation to the members thereof was that of a holding company, trustee or agent. The decision of the court was greatly affected by the statutes of Oregon, and we are unable to determine from the reading of the opinion whether the plaintiff in that action was a stockholder of the water company or merely had a contract with it whereby it was to furnish him with the water. In any event, there was not involved any question of a stockholder maintaining a suit against a third

person who had entered into a contract with the company.

It is our view that the appellants in this case are in no different relationship with the water company than any stockholder in any private corporation, and that the general rules with reference to the maintenance of suits of this character must apply here.

Under another head in their brief the appellants contend that they are entitled to maintain this action because they do not sue on behalf of the water company to enforce a right which belongs to it as a corporate entity, but to enforce their individual rights against that company, and that the primary purpose of this action is to compel the water company to discharge its obligation to furnish electricity. It seems to us that this argument tends to beg the question. If this were a suit solely against the water company by one of its stockholders, the suit being based upon the contract whereby the company was bound to furnish electricity, a very different question would arise. In other words, it may be that these appellants have a right of action against the water company to compel it to furnish electricity. That question we do not decide. While that company is made a defendant in this action, it is, in our opinion, only a nominal defendant, the real defendant being the power company, and the sole purpose of this action is to require the power company to furnish electricity to the water company in order that the latter may furnish it to the appellants. The presence in court of the water company cannot assist appellants in acquiring what they desire. So far as the purpose of this action is concerned, it seems to us that while the water company may be a proper party, it is wholly an unnecessary one. It was the water company and not the appellants that entered

into the contract with the power company. There is no privity of contract whatsoever between them and the last named company. It never agreed to furnish electricity to them.

Appellants further contend that, if it be conceded that this is a stockholders' suit on behalf of the water company, yet they come within certain exceptions to the general rules. It is stated that the refusal of the board of trustees of the water company to make any effort to protect the stockholders' rights was an *ultra vires* act and was not in the exercise of judgment, but was the result of fear or compulsion. The idea which appellants develop is that the trustees of the water company refused to maintain this suit because they feared that if they did so the power company might refuse to deliver any electricity whatsoever, thus doing great injury to all owners of land rather than to a few. We cannot find that this argument is supported by the testimony. It may be true that the trustees had some such fear, but notwithstanding that, they submitted to attorneys the legal proposition as to whether the water company could successfully maintain against the power company a suit such as is brought here, and they seem to have acted upon advice thus received.

Another argument of the same general character is made, wherein it is asserted that the authorities generally hold that where officers of a corporation refuse to resist some threatened injury to the corporation or its property or rights, because of the difficulties of resistance or because of fear of public opinion, the stockholders may maintain an action on behalf of the corporation. Some of the cases cited in support of this view are *Dodge v. Woolsey*, 18 How. (U. S.) 331, where the corporation officers refused to contest a tax because of "many obstacles in the way of testing the

law in the courts of the state," and *Hill v. Wallace*, 259 U. S. 44, where the officers of a corporation refused to bring a suit which ordinarily should have been brought, "because they fear to antagonize the public officials whose duty it is to construe and enforce said act." Manifestly, the doctrine contended for and the cases cited in its support are not applicable to the situation here. The board of trustees of the water company did not refuse to maintain this action because of any difficulties or because of any effect it might have on public or private opinion, but solely because they believed, and were so advised by eminent counsel, that a suit against the power company would ultimately fail.

The trial court, in concluding his memorandum opinion, very aptly said:

"It is not contended—in any event, it cannot be maintained—under the evidence in this case that the conduct of the trustees of the water company was ultra vires, irregular, fraudulent or oppressive. On the contrary, the evidence shows conclusively that they acted in the best of faith. When the dispute arose between their company and the power company over the construction of the power contract, they sought the advice of counsel, and acting upon that advice, they refused to bring suit under the belief that a suit would prove futile. In so doing they exercised a discretion not only entrusted to them, but imposed upon them by statute. Sec. 4516 P. C. provides: 'The corporate powers of a corporation shall be exercised by a board of not less than two trustees . . .' If the court undertook to grant plaintiffs relief in this case it would in effect render nugatory this section of the statute and take upon itself the management and control of the internal affairs of corporations."

Judgment affirmed.

TOLMAN, C. J., PARKER, MACKINTOSH, and ASKREN, JJ., concur.