**Mr. and Mrs. Richard BOURNE, et al., Plaintiffs-Appellants,**

v.

**Dwayne WILLIAMS et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section at Jackson.

March 17, 1981.

Permission to Appeal Denied by Supreme Court June 1, 1981.

George R. Fusner, Jr., Jackson, for plaintiffs-appellants.

Charles C. Harrell, of the law firm of Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for defendants-appellees.

Jerry D. Kizer, Jr., of the law firm of Menzies, Rainey & Kizer, Jackson, for appellee Ohio Cas. Ins. Co.

TOMLIN, Judge.

This suit was instituted in the Chancery Court of Hardeman County, Tennessee, by 28 owners of parcels of real estate located in the Grand Valley Lakes Subdivision, located in Hardeman County, Tennessee, which is purported to be maintained by the Grand Valley Lakes Property Owners Association, Inc., a nonprofit corporation incorporated under the laws of the State of Tennessee, hereafter referred to in this opinion as the "Corporation." The suit is against the Corporation, members of the executive committee and board of directors of the Corporation, charging the board of directors with wasting corporate assets to the detriment of the Corporation, and with using corporate assets for the personal gain of the individual board members, alleging further that corporate assets were likewise being depleted.

The plaintiffs, asserting that as lot owners in the subdivision they were thus made members of the nonprofit Corporation, also allege that the defendant Corporation had under its control and management liquid assets in excess of $200,000, and that in addition thereto had the responsibility for and the charge and control of other common area physical assets, such as club house, public roads, golf course, lake, marina and swimming pool, among others.

In great detail, which will not be gone into here, plaintiffs charge the Corporation and the individual defendants with taking actions contrary to the best interests of the Corporation, and in violation of the purposes for which the Corporation was formed. There is also an allegation setting forth the steps taken by the plaintiffs to remedy the actions complained of by the board of directors and executive committee without resorting to this litigation. The complaint also alleges a fiduciary duty on the part of the defendants to use the assets for the best interests of the Corporation. The action is brought as a shareholder's derivative action, seeking injunctive relief and money judgments for the benefit and on behalf of the Corporation.

The defendants filed a motion to dismiss under Rule 12.02, T.R.C.P., stating that the complaint failed to state a cause of action, grounding their motion to dismiss on the bedrock of T.C.A. sec. 48–718, to the effect that shareholder's derivative action may be brought only on behalf of a corporation for profit, and that inasmuch as the defendant Corporation was a corporation not for profit, that this action should fail.

After considering argument of counsel and memoranda filed on behalf of all the parties, the Chancellor found that T.C.A. sec. 48–718 controlled, and dismissed the complaint. It is from this ruling that the plaintiffs have appealed.

For the reasons hereinafter set forth, we reverse the Chancellor below and remand the case for a hearing on the merits.

The fourteen chapters of the General Corporation Act were enacted into Tennessee Code Annotated in 1968. However, the courts of this state have for many, many years been available to enforce the rights of corporations, as well as their stockholders and officers. As early as the latter part of the last century, our Supreme Court recognized the rights of stockholders of a corporation to bring what is now called a "derivative action." In the case of *Deaderick v. Wilson*, 67 Tenn. 108 (1874), suit was filed in the Chancery Court of Hamblen County by a group of stockholders on their own behalf and on behalf of all the other stockholders, against the corporation and certain officers and directors.

In affirming that a court of equity would provide a forum for a suit of this nature, the court stated at page 131:

It has been earnestly argued that conceding there has been an improper exercise of power by the officers and directors in making these contracts, and in the use of the money of the corporation in carrying them out, yet no suit can be brought or sustained such as this, beceause (sic) the bill does not aver that the directors have

on application refused to sue in the name of the corporation, or to allow a suit to be brought in its name for such misapplication. That this is the general rule there can be no question. It is based on the principle, that the funds belong to the corporation, not the stockholder, and therefore the corporation should sue for it, or if the shareholders sue it should be with the consent of the corporation to the use of its name. See Ang. & Ames on Corp., p. 367, sec. 312, 6th Ed.; Redf. on R., vol. 2d, p. 335, secs. 9, 10, 11, 3d Ed. But we think on sound principle, as well as authority, there are well-settled exceptions to this rule. It is laid down in Ang. & Ames on Corp., 367: "But as a court of equity never permits a wrong to go unredressed, merely for the sake of form, if it appear (sic) that the directors of a corporation refuse in such cases to prosecute, by collusion with those who had made themselves answerable by their negligence or fraud—or if the corporation is still under the control of those who must be defendants in the suit, the stockholders, who are the real parties in interest, will be permitted to file a bill in their own name, making the corporation a party defendants (sic)." See, also *Mussina v. Goldthwaite*, 7th Am.R., 282, (34 Texas.) We think this exception is as well based and as sound as the general proposition itself. Applying it to the case before us, taking the facts in the bill as true, it appears, that the parties defendant are the parties who have ben guilty of the alleged misuse of the funds; that they are still the officers of the road, and have a controlling interest in its management; that they have procured an endorsement and approval of their contracts by the board of directors, in spite of, and over the opposition of the minority of the stockholders; and are not only interested in their feelings, but pecuniarily, in having these contracts remain undisturbed, and in full force. Under these circumstances, we hold, that the stockholder may well bring his suit in equity for redress, making the parties complained of defendants together with the corporation,

as has been done in this case. If there was no remedy in such cases given in a court of equity, the directors might put the stockholders to defiance, or so embarrass and delay them as to do great injury, and on either ground the jurisdiction, we think, maintainable.

This holding in *Deaderick* is of course by no means dispositive of the present issue, for in *Deaderick* the corporation involved was a corporation for profit. It is cited to illustrate that over a hundred years ago the courts of this state recognized the right of access to the chancery court by stockholders aggrieved, as the shareholders who are members of the Corporation in the present case claim to be aggrieved. Although not labeled derivative actions, there are at least two Tennessee cases in which members of nonprofit corporations have challenged actions of the corporation or its directors and/or officers for the benefit of the corporation, wherein the standing or the right to sue has not been disputed on the basis of their status as members of a nonprofit corporation. See *Knapp v. Supreme Commandery, U.O.G.C. of the World*, 121 Tenn. 212, 118 S.W. 390 (1908); and *Range v. Tennessee Burley Tobacco Growers Ass'n*, 41 Tenn.App. 667, 298 S.W.2d 545 (1955), cert. denied.

■ The body of law governing the operation and management of corporations was fairly well developed as of 1968, when our General Corporation Act was passed. It has long been recognized that where a wrong to the corporation was claimed by a stockholder, if the board of directors of the corporation did not take steps to rectify the wrong, then a stockholder could bring the action in the name of the corporation, for the benefit of the corporation. This is the gravamen of a "derivative" suit. 13 Fletcher, Cyc. Corp. sec. 5908 (perm. ed. 1980). See also *Opportunity Christian Church v. Washington Water Power Co.*, 136 Wash. 116, 238 P. 641 (1925).

■ It has likewise been established as part of the general law of corporations that members of nonprofit corporations have the

same rights in this regard as stockholders of corporations for profit. As stated in 13 Fletcher, Cyc.Corp. (Perm.Ed.1980) *supra*, at sec. 5950:

The right of a stockholder to sue is not affected by the nature or kind of the corporation, and the law pertaining to derivative suits applies to a non-profit corporation exactly the same as if it were a business corporation. . . .

◼ We are not unmindful of the fact, as succinctly pointed out by defendants in their brief, that the only statutory authority for bringing a derivative suit is enunciated in T.C.A. sec. 48–718, wherein the first sentence clearly reads: "A suit may be brought in the right of a domestic or foreign corporation *for profit* to procure a judgment in its favor, by a holder of its shares. . ." (emphasis supplied).

An examination of the General Corporation Act reveals that it consists of 14 chapters, codified as T.C.A. secs. 48–101 through 48–1407. Aside from some of the definitions, the terms used in most of the 14 chapters are terms that generally relate to corporations for profit.

Chapter 6 of the Act is entitled "PROVISIONS RELATED TO CORPORATIONS NOT FOR PROFIT." However, the powers, privileges and duties of corporations not for profit are not isolated solely within the confines of chapter 6, for it is stated in T.C.A. sec. 48–602 that: "The board of a corporation not for profit may take any action which is permitted or required to be taken by members (of the corporation not for profit) under chapters 1 through 14 of this title. . ." proceeding to set forth the voting mechanism of how such action might be taken.

T.C.A. sec. 48–718, already referred to as the derivative suit statute, is contained as a part of chapter 7 of the Act. In other sections of the same chapter, specifically secs. 48–702, –703, –705, –706, –708, –710, –711, –714 and –716, the term "members" is used as a companion to the term "shareholders," clearly indicating to this Court that the drafters had in mind a nonprofit corporation, as well as a corporation for profit.

We do not believe our decision in this case in any way undermines the principles laid down in *Southern v. Beeler*, 183 Tenn. 272, 195 S.W.2d 857 (1946). As a matter of fact, it is substantially consistent with it in many ways. At page 866 of 195 S.W.2d, the Supreme Court in *Beeler* states:

In considering the intention of the legislature as to the distribution of school funds, we must look to every section of the general school law. In other words, all Code sections dealing with the same subject, that of education, must be considered in pari materia. . . .

In reaching the conclusion it did this Court has considered and reviewed all the sections of The General Corporation Act of this state, considering them in pari materia.

While this Court would prefer that specific statutory authority be spelled out more clearly, nonetheless, it is not without adequate precedent to see to it that the plaintiffs at least have their day in court. See *Horner v. Marine Engineers' Ben. Ass'n, No. 97, Ect.*, 175 Cal.App.2d 837, 1 Cal.Rptr. 113 (1959); *Malone v. Superior Court*, 40 Cal.2d 546, 254 P.2d 517 (1953); *Vallé v. North Jersey Automobile Club*, 125 N.J.Super. 302, 310 A.2d 518 (1973). The *Valle* case is the case most clearly in point. In *Valle*, the State of New Jersey had a statute governing the bringing of derivative actions by shareholders, but the limitation in the language of the statute, while not quite as strong as the language in ours, vested the right to bring a derivative action in "shareholders," rather than in "shareholders and members." The Supreme Court of New Jersey held that implicit in the term "shareholder" was also the term "member." The court proceeded to allow a derivative action to be maintained by a member of a corporation not for profit.

In our modern society, corporations not for profit are widely used. Many of them, as in the case of the defendant before us, own, or have access to and control valuable assets that belong to its members. In the case under consideration it is alleged that

the defendant Corporation had liquid assets in excess of $200,000, as well as the right to manage and control other valuable real assets, which all belonged or inured to the benefit of the members of the Corporation —i.e., the property owners in the subdivision. It would be unconscienable for this Court to say, that in a case such as this, simply because the corporate entity was organized as a corporation not for profit as opposed to a corporation for profit, that there would be no forum available to members of the corporation who believe that the Corporation was being harmed and damaged by alleged illegal and unauthorized acts by its officers and/or directors.

But for being members of a corporation not for profit, as opposed to being stockholders of a corporation for profit, the plaintiffs have stated a cause of action in their complaint. We do not pass judgment upon the merits of the many serious allegations made therein. We do say, however, that plaintiffs are entitled to a full hearing in a court of equity on these allegations. The costs are taxed to the defendants herein.

MATHERNE and NEARN, JJ., concur.