Otto HANNEWALD, et al., Appellants,

v.

FAIRFIELD COMMUNITIES, INC., et al., Appellees.

Court of Appeals of Tennessee, Eastern Section.

Jan. 13, 1983.

Permission to Appeal Denied by Supreme Court April 18, 1983.

James A. Ridley, III, and David E. Rodgers of Kramer, Johnson, Rayson, McVeigh and Leak, Knoxville, for appellants.

Wilson Sims and John S. Bryant of Bass, Berry & Sims, Nashville, for Fairfield Glade Communities, Inc., George F. Donovan, James F. Reed and Thomas V. Swafford.

William T. Conner of Looney, Looney & Conner, Crossville, for Fairfield Glade Community Club.

## OPINION

PARROTT, Presiding Judge.

In this case, we are asked to review a chancellor's extensive findings of fact and conclusions of law in a dispute involving the organization and management of a resort community in Cumberland County. Plaintiffs-appellants are more than 80 property owners in Fairfield Glade, the resort community involved in this dispute. They bring this action on behalf of their property owners' association, Fairfield Glade Community Club, Inc., which is a nominal defendant-appellee. Appellants in substance bring this action against Fairfield Communities, Inc., a Delaware corporation with its main office in Arkansas, which is the developer of Fairfield Glade.

Also named as defendants are George F. Donovan, James F. Reed, and Thomas V. Swafford, officers and employees of appellee-Fairfield Communities, Inc., who are also serving as members of the Board of Directors of Fairfield Glade Community Club, Inc. In addition to the many questions brought by plaintiffs-appellants, defendants-appellees also raise several issues in this appeal. We will treat each of these issues with the applicable standard of review as stated by T.R.A.P. 13(d): "de novo upon the record of the trial court, accompanied by a presumption of the correctness of

the finding, unless the preponderance of the evidence is otherwise."

In 1970, the defendant Fairfield Communities, Inc. (hereinafter the Developer) purchased approximately 9,000 acres of undeveloped woodland in Cumberland County to be developed as a retirement community. Subsequently, the developer caused to be created Fairfield Glade Community Club (hereinafter the Club), a nonprofit corporation, membership in which was automatically conferred upon all purchasers of lots in Fairfield Glade. Among its responsibilities, the Club was to maintain and operate certain common facilities. Revenue to enable the Club to fulfill its responsibilities was to be generated primarily through dues assessed upon its members. According to the Declaration of Covenants and Restrictions dated May 1, 1980, a dues-paying obligation exists with respect to each and every lot platted, the Developer to pay the dues for those lots yet unsold (i.e. still owned by the Developer).

Some eight years before the commencement of this action, the Developer began the practice of paying dues at the time the lots were placed in the "sales inventory" rather than when the lots were platted as required by the covenants and restrictions. The result of this practice was that the Developer avoided paying dues on the unsold lots until they were ready for sale. Eventually, the Developer succeeded in having the Club pass a resolution which relieved the Developer from the obligation to pay dues on these unsold lots. The resolution only required dues to be paid with respect to lots already under sales contract or paid for and purchased by third parties. The plaintiffs sought relief from this practice through the Board of Directors of the Club, but the Board consistently voted down these efforts, as the Board is dominated by employees of the Developer.

The plaintiffs, who are property owners in Fairfield Glade, brought this action against the Developer, the Club, and individual directors of the Club. The plaintiffs allege numerous theories against the defendants, including failure of the Developer to pay to the Club dues allegedly required by the Declaration of Covenants and Restrictions, failure to collect past dues owed from defaulting purchasers or their successors in title, improper and illegal exercise of control by the Developer over the affairs of the Club, improper accounting for $143,623 allegedly contributed to the Club by the Developer, improper allocation of operating expenses between the Developer and the Club, and improper actions by the individual defendants as directors of the Club.

From the voluminous record and detailed evidence accumulated in this complex matter, the chancellor produced a lengthy but coherent memorandum opinion. Briefly, we will summarize his disposition of the case. To begin with, the chancellor held that appellants were proceeding as a derivative action for the benefit of the Club. He further held that the covenants and restrictions, by their plain language, require the Developer to pay dues to the Club for *all* platted lots, not just those in the sales inventory. He concurrently held, however, that this finding would be applied *prospectively,* because appellants were barred by "laches and equitable estoppel" from collecting the past dues. This holding was due to "unexcusable delay in making demand upon the Developer...."

The court stated that property, benefits, and other contributions made to the Club by the Developer during the period in question equalled or exceeded the unpaid dues. It further held that the Developer had not failed to reasonably pursue the collection of delinquent dues and that its domination of the Board of Directors of the Club was proper under the covenants and bylaws. The Developer was also absolved of any liability concerning the $143,623 accounting discrepancy in 1975. The chancellor also ordered the Developer to contribute to certain improvements in Fairfield Glade, in particular the sewage system. In a final, separate decree, the Club was required to pay appellants' attorney's fees and expenses totalling $156,912.79, plus the fees and expenses of the Club's attorney, William T. Conner, in the amount of $50,000.00.

The initial issue we must decide in this case is whether the posture of this proceeding is as a derivative suit on behalf of the Fairfield Glade Community Club, or whether the several plaintiffs are proceeding in their own interests as individual property owners in Fairfield Glade. The record indicates that the court below was split in its opinion on this question.

Chancellor Camp, the first judge in this lawsuit, ruled by an order of August 20, 1979, that this was not a derivative suit. Chancellor Neal, however, who presided at the trial, ruled in his memorandum opinion of October 15, 1981, that

> Notwithstanding the prior order of the Court dismissing the derivative aspect of the case, the plaintiffs contend that they do have the right to maintain this action for the use and benefit of the Club as provided by Article XV of the Declaration of Covenants and Restrictions (Exhibit 1). Chancellor Camp previously dismissed the action as a derivative action apparently basing his decision on the fact that the Tennessee General Corporation Act does not make provision for a derivative suit by members of a not-for-profit corporation. However, apparently overlooked is the provision for such a suit contained in Rule 23:06 TRCP which authorizes a *member* to enforce the rights of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it.... In this case the plaintiffs made demand upon the Club to proceed against the Developer to enforce certain purported rights which request was refused by the Club. Therefore, under the general principles of equity, the Tennessee Rules of Civil Procedure and the Declaration of Covenants and Restrictions, the plaintiffs have the right to maintain this suit individually and for the use and benefit of the Club. The plaintiffs do not contend that they are individually entitled to a monetary recovery from the Developer.

■ We believe that this action is proper for treatment as a derivative suit. There is no dispute that under the relevant provisions of the Declaration of Covenants and Restrictions for Fairfield Glade, property owners are members of the Fairfield Glade Community Club. The Fairfield Glade Community Club is a not-for-profit corporation chartered with the State of Tennessee. Hence, the question becomes whether members, as opposed to stockholders, of a not-for-profit corporation can bring a derivative action in Tennessee. We hold that they can.

The Tennessee Corporation Act discusses shareholders' derivative suits in T.C.A. § 48–718. Subsection (4) of that provision specifically refers to such actions as being "brought on behalf of the corporation for profit...." Appellees argue that this language, by not including not-for-profit corporations, tacitly bars such suits.

The language of T.R.C.P. 23.06 is broader:

> Derivative actions by shareholders.—In a derivative action brought by one or more shareholders *or members* to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share of membership thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders, or members, and the reasons for his failure to obtain the action or for not making the effort. The derivation action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be voluntarily dismissed or compromised without the approval of the court, and notice of the proposed dismiss-

al or compromise shall be given to shareholders or members in such manner as the court directs. (Emphasis added.)

We believe that the inclusion of the language "or members" in this rule evidences an attempt to broaden the availability of derivative actions. Significantly, limitation is not made to corporations for profit.

Appellees point out in this brief that the advisory committee's comment to this rule specifically states that "(r)ule 23.06 does not conflict with the provisions of T.C.A. § 48–718 and will not repeal any of its provisions." Our holding today does not cause 23.06 to conflict with 48–718 or in any way repeal the statutory provision. To say that 23.06 is broader than 48–718 is not to say that they are in conflict. 48–718 does not affirmatively bar derivative suits such as the present case; it simply does not specifically include them. We hold that 23.06 does include them.

> Other authorities support this position:
>
> The right of a stockholder to sue is not affected by the nature or kind of the corporation, and the law pertaining to derivative suits applies to a nonprofit corporation exactly the same as if it were a business corporation. Rule 23.1 of the Federal Rules of Civil Procedure (in relevant parts exactly the same as T.R.C.P. 23.06) specifically applies to a derivative action brought by one or more "shareholders or members" to enforce a right of a corporation.
>
> 13 *Fletcher Cyclopedia of the Law of Private Corporations* § 5950 (Perm.Ed.1980 Rev.Vol.). Also,
>
> [M]embers of a membership corporation have standing to bring a derivative suit on behalf of the corporation even though they are not "shareholders" in the true sense, and notwithstanding that they were not members of the corporation at the time of the transactions complained of, or that their voting rights may be restricted.
>
> *Id.* § 5972.

Finally, appellants have persuasively cited the old Tennessee Supreme Court decision of *Knapp v. Supreme Commandery,*

*United Order of the Golden Cross of the World,* 121 Tenn. 212, 118 S.W. 390 (1908). In that case, which predates both the Tennessee Corporation Act and the Tennessee Rules of Civil Procedure, a member of a corporation "for the general welfare and not for profit" was allowed to bring a derivative action for the benefit of the corporation.

In a very recent opinion by the Middle Section of this court in a case with great factual and legal similarity to the present one, the court held that a derivative action could be brought by a member of a not-for-profit corporation. *Bourne v. Williams,* 633 S.W.2d 469 (Tenn.App.1981). The court relied on T.C.A. § 48–718 in reaching its opinion, without citing T.R.C.P. 23.06. We feel that the additional consideration of the language of T.R.C.P. 23.06 only strengthens the case. For all of these reasons, we hold that this case is properly a derivative action.

■ The next issue we will address is whether the Declaration of Covenants and Restrictions requires the Developer to pay dues on all lots that have been platted and recorded, or whether the Developer is only responsible for dues on those lots in the "sales inventory." The chancellor held that the Developer is responsible for dues on all lots, including those not in the sales inventory. We concur with his judgment on this issue.

Appellees forcefully argue that their scheme of dues payment was reasonable by any practical assessment, and that a consideration of all the circumstances surrounding the platting and recording of the "undeveloped" lots at Fairfield Glade makes it manifestly clear that dues payment as members of the Club on these lots was *not* contemplated by the parties. Appellees present a thorough discussion of Tennessee law relating to the interpretation of covenants, and assert that our construction of the language in the covenants must be tempered with a reasonable view of the circumstances surrounding their creation. We, of course, have no argument with this approach.

Appellees developed at trial and reiterate here that the large number of lots platted and recorded but not in any other sense developed or ready for sale were only platted and recorded to comply with HUD requirements for registration. There was also testimony establishing that these lots in no way benefitted from any property owned by the Club, and that in some cases, no roads even go into the property. All of this may be true, but we must agree with the chancellor that it does not excuse the Developer from paying dues on the lots by what appears to be the plain meaning of the Covenants and Restrictions.

As we read the provisions in question, they require that any owner of a lot in a recorded plat becomes a member of the Club and must pay dues. It is specifically provided that the Developer can be an owner for these purposes. The chancellor evaluated all of these provisions in his memorandum opinion, and after a careful review we cannot say that by a preponderance of the evidence he was wrong. Under the proper standard of review, therefore, we must affirm.

Appellants also contend that the Developer has been delinquent in its obligation to collect dues for the Club, that the Developer is liable for these uncollected dues, and also that the Developer is responsible for dues owed on previously sold lots for which the contract of sale with a third party has been cancelled. We have reviewed these issues and the arguments made thereon and find no error in the chancellor's decree.

A vast amount of evidence was presented in this case concerning the financial condition of the Club. Specifically at issue is whether the Club can meet its upcoming financial obligations, whether a new accounting for the past financial activities of the Club is necessary, whether the Developer is liable for a discrepancy of $143,623 discovered in 1975, whether a $1,000,000 bond issue was proper, and whether the Developer has any liability arising from the bond issue. Appellants and appellees draw diametrically opposed conclusions from the morass of evidence and exhibits presented.

We have carefully reviewed the chancellor's findings, the record, and the arguments of counsel in the briefs, and, again, we cannot say that the trial court's conclusions are wrong by a preponderance of the evidence. We think it clear that no new accounting is necessary, because independent audits have been made of the Club's finances regularly in the past. There is also substantial evidence in the record indicating that the Club is in good financial condition.

The chancellor specifically found that the $143,623 discrepancy in 1975 was an accounting error and that the Developer did not intend it as a gift. The evidence supports this conclusion. We also concur with the chancellor's conclusions concerning both the propriety of and the Developer's lack of liability under the bond issue. Similarly, we affirm his disposition of the sewer controversy. In all of these matters, the presumption of the trial court's correctness has not been overcome by the weight of evidence in the record or by any error of law.

■ Appellees raise the argument that any claim arising prior to March 1, 1973, is barred by the six-year statute of limitations on contracts of T.C.A. § 28–3–109. Appellants filed their complaint on March 1, 1979. Appellants concede in their reply brief that any claim for dues owed under the Covenants and Restrictions prior to March 1, 1973, is barred by the six-year limitation. Therefore, we hold that any enforcement of this opinion shall not include dues on lots prior to March 1, 1973.

■ We now turn our attention to dues owed by the Developer during the period from six years before the filing of this suit, March 1, 1973, until the date of the chancellor's decree, December 8, 1981. The chancellor held that appellants' claim for the Developer's unpaid dues during this period, even though the dues were legitimately owed to the Club, was barred by laches and estoppel. We affirm this holding, and limit the Developer's dues-paying responsibility on platted lots to the time beginning at the date of the chancellor's decree.

The court below found, and we concur, that appellants knew or should have known of the Developer's dues-paying practices as early as 1973. It is evident from the minutes of a special meeting of the Board of Directors on July 30, 1973 (Exhibit # 85) that the Developer was only paying membership dues on platted lots in the "sales inventory." As members of the Club, appellants are charged with knowledge of the proceedings of their own Board of Directors as reflected in the minutes. This is particularly true in this action, in that appellants are proceeding in a derivative action for the benefit of the Club.

Laches and estoppel, as appellants contend, are not synonymous, but they are closely related. In simplest terms, the doctrine of laches provides that equity will not intervene on behalf of one who has delayed unreasonably in pursuing his rights. The doctrine of estoppel holds that one may not enforce rights against another when that other has materially relied on some conduct of the moving party which is in conflict with his asserted right. See generally Gibson's Suits in Chancery § 44 & § 48 (6th Ed.1982).

Laches is based on equitable estoppel. State v. McPhail, 156 Tenn. 459, 2 S.W.2d 413 (1928); Clark v. American Nat'l Bank and Trust Co. of Chattanooga, 531 S.W.2d 563 (Tenn.App.1974). Laches is more than mere delay, and depends on the facts and circumstances of each individual situation:

> Long delay alone in the prosecution of a claim is insufficient for the application of the doctrine of laches. The present circumstances of the parties must be considered. There must be actual acquiescence or that implied from the circumstances of the case, in the conduct of the defendant. Whether or not such exists is dependent upon the facts. And whether the facts are sufficient is dependent upon the Court applying those facts. One Court may reach a different conclusion than another.

Clark, supra, at 573.

The delay must materially affect the rights of another for the doctrine of laches to apply. Robertson v. Davis, 169 Tenn. 659, 90 S.W.2d 746 (1936); Hamilton Nat'l Bank v. Woods, 34 Tenn.App. 360, 238 S.W.2d 109 (1951). In fact, this has been held to be the most important factor:

> ... the determinative test as to laches, which may be available as a successful defense, is not the length of time that has elapsed, but whether, because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay.

Brister v. Estate of Brubaker, 47 Tenn.App. 150, 162–63, 336 S.W.2d 326, 332 (1960). Finally, "the determination of all issues on questions of laches and estoppel is the function of the chancellor, and his decision thereon will not be reversed on appeal unless it is clearly shown to be wrong." Freeman v. Martin Robowash, Inc., 61 Tenn. App. 677, 690–91, 457 S.W.2d 606, 612 (1970).

We have carefully considered the present case in light of the foregoing legal principles, and we cannot conclude that the chancellor below erred in his application of the law by making his decree prospective only. He had the benefit of evaluating the witnesses and the presentation of the evidence first hand, and accorded the presumption of correctness, we feel that the record on appeal supports him.

The evidence indicates that the Developer did make material contributions to Fairfield Glade for the benefit of the Club in the period 1973–1979 that it would not have had appellants been pursuing this action. The testimony of C. Randolph Warner, chair and chief executive officer of the Developer, is persuasive on this point. Further, it seems reasonable that the Developer would have moved to change the wording of the Covenants and Restrictions had appellants initiated this action when they first became aware of it. As we have stated, the application of laches and equitable estoppel depends upon the equities at stake in each individual case, and in the present suit, we feel that the practical realities of the situation allow its application.

Appellants insist that if laches is applied, it should only affect a period terminating with the initiation of this suit. We feel that the date of the chancellor's decree is the proper time for its application to begin. During the course of this action, the true status of the Developer's dues obligation was unsettled, and we do not think it appropriate to apply the final decree to this time period. For this reason, we let the effective date of the decree stand as is.

We have duly considered all of appellants' other legal arguments attacking the chancellor's decree on laches and estoppel and find them without sufficient merit to change the result. Even if the period of delay by appellants in pursuing their rights is inadequate to satisfy the requirements of laches, we feel, as the chancellor held, that equitable estoppel is applicable.

The final issue we will discuss is whether the Fairfield Glade Community Club should be required to pay the attorney's fees of both the attorney hired by the Board of Directors to represent the Club's interests, and the attorney hired by appellants to pursue this derivative action. The court below concluded that the Club is responsible for the fees and expenses of both groups of attorneys. After a review of the applicable law, we agree.

█ Appellants challenge the chancellor's decree of January 12, 1982, insofar as it refused to enjoin the Club from paying attorney's fees to William T. Conner of approximately $50,000.00. They assert that the Club should not have to pay this fee because Conner was not acting in the best interests of the Club and in reality only served the Developer's interests throughout this litigation.

Appellants base their challenge to Mr. Conner's fee on their general allegations of conflicts of interest within the Board of Directors of the Club in its operation and management. They further assert that it was they who were proceeding in the true interests of the Club, not Mr. Conners. As the chancellor held, the Developer's domination of the Club was not improper under the Bylaws of the Club. It would, therefore, be inconsistent for us to now disallow attorney's fees to a lawyer hired by the Club because it was so dominated.

Even though we have also held that appellants are proceeding in a derivative action for the benefit of the Club, we do not feel that this should relieve the Club from paying an attorney validly hired by its own Board of Directors—despite the fact that appellants and the Club usually found themselves on opposite sides of the issues.

Appellees, in turn, challenge the chancellor's decree ordering the Club to pay appellants' attorneys $156,912.79 plus interest in fees. Both sides have briefed this issue and it merits discussion here. Again, we feel that the applicable law supports the chancellor's ruling on this issue, and we therefore affirm.

As we have previously held, this is a derivative action. We based this holding on T.R.C.P. 23.06 and the recent opinion in *Bourne v. Williams*, 633 S.W.2d 469 (Tenn. App.1981). *Bourne* was grounded on T.C.A. § 48–718. In reference to attorney's fees, § 48–718 states:

(4) The suit shall be brought on behalf of the corporation for profit and any recovery, in whole or in part, and whether by way of judgment, compromise or settlement of the suit, shall inure solely to the benefit of the corporation under proper orders of the court. If the suit is successful, in whole or in part, or if anything is received by the corporation for profit as a result thereof, *the court may award the complainant or complaints reasonable expenses and reasonable attorneys' fees,* and shall provide for payment thereof by the corporation and shall declare a lien upon the recovery made by the corporation to secure the payment to the complainant or complainants and his or their attorneys of the amount thus awarded. This subsection shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them. (Emphasis added.)

Appellees insist that the wording of this section clearly limits recovery of attorney's fees thereunder to corporations for profit. The reasoning of the *Bourne* decision and our own in this case leads us to the conclusion that the statute, read as a whole and in conjunction with T.R.C.P. 23.06, does *not* bar members of not-for-profit corporations from recovering attorney's fees in successful derivative actions.

■ One of the major purposes in allowing derivative actions is to aid shareholders in enforcing rights of the corporation which the corporation refuses to enforce. We feel that attorney's fees are made available in successful derivative suits to encourage and assist shareholders or members in pursuing justified claims for the benefit of corporations in which they have a valid interest. It seems clear that this statutory purpose is fully applicable to cases in which members seek to enforce the rights of not-for-profit corporations. In short, we see no logical reasons for denying attorney's fees to appellants' lawyers.

■ Appellees effectively establish in their brief the long-held rule in Tennessee that attorney's fees incurred by a plaintiff in recovering a judgment are not a proper element of damages. *State ex rel. Orr v. Thomas,* 585 S.W.2d 606 (Tenn.1979) (citing many other cases on the same point). Equally well-established is the exception to this rule that attorney's fees *can* be awarded when allowed by statute. *State ex rel. Orr, id.* We hold that this derivative action is an appropriate case to fit into the statutory exception under *Bourne's* reading of T.C.A. § 48–718 and the policies we have previously enunciated.

Appellees argue that the very recent decision in *Fifth Third Co. v. Mooreland Estates Homeowners Ass'n,* 639 S.W.2d 292 (Tenn.App.1982), demands a different result. We disagree. *Fifth Third* is distinguishable on its facts. The controlling difference is that *Fifth Third* was not a derivative action. This one is. In that case, the assignee of a developer was suing the property owner's association and its board of directors for an alleged deprivation of vot-

ing rights in the association. It is true that the defendants in that action counterclaimed for delinquent assessments, but the counterclaim was not treated as a derivative suit.

The *Fifth Third* court iterated the familiar rule:

The general rule in Tennessee is that attorneys fees may not be recovered unless provided for by statute or by contract between the parties. *Goings v. Aetna Casualty & Surety Company,* 491 S.W.2d 847 (Tenn.App.1972). There are exceptions to this rule, such as where there are property or funds before the court which have been protected or preserved by a party, and then his counsel fees may be paid out of the property or fund so preserved. *French, et al. v. Appalachian Electric Cooperative,* 580 S.W.2d 565, 571 (Tenn.App.1978).

In the absence of property or funds before the court, or statute, or contract of the parties, the public policy of Tennessee is opposed to the allowance of attorneys fees of the successful party against the defeated party. *Gillespie v. Federal Compress & Warehouse Co.,* 37 Tenn.App. 476, 265 S.W.2d 21 (1953).

We feel that it is quite a different case in which individual property owners begin the lawsuit as plaintiffs, the action is derivative, and a statute providing for attorney's fees has been held to apply.

T.C.A. § 48–718(4) limits recovery of attorney's fees in derivative actions to suits that are "successful, in whole or in part...." Taken as a whole, we think that it is without doubt that appellants' suit has been, in part, successful. Therefore, we do not view this as an impediment to appellants' recovery of attorney's fees. For all of these reasons, we hold that the chancellor's ruling as to all attorney's fees be affirmed.

Let the costs for this appeal be equally divided among the parties.

FRANKS, J., concur with opinion.

SANDERS, J., concurs.

FRANKS, Justice, concurring.

I concur with the results reached by the majority but I do not accept the conclusion that T.C.A., § 48–718 authorizes the award of attorneys' fees in this case. The statute specifically applies to "suits brought on behalf of the corporation for profit." In my view, the application of this statute to a not-for-profit corporation is an unwarranted extension of the statute.

The majority relies on *Bourne v. Williams,* 633 S.W.2d 469 (1981), which held T.C.A., § 48–718 authorizes shareholder derivative suits by members of a not-for-profit corporation. The *Bourne* case unnecessarily distorts the language of the statute since Tennessee law recognizes the right to maintain an action of that nature independent of statute. *Knapp v. Golden Cross,* 121 Tenn. 212, 118 S.W. 390 (1908). In *Knapp,* members of an association were held to have standing to sue the association to enjoin the merger with another association on grounds that the merger was *ultra vires. See also Range v. Tennessee Burley Tobacco Growers Ass'n,* 41 Tenn.App. 667, 298 S.W.2d 545 (1955). Enactment of Tennessee Rules of Civil Procedure did not change the substantive law and T.R.C.P., 23.06, merely recognizes the right of action pronounced in *Knapp.*

The result of the majority, however, is proper by application of widely accepted common law rules regarding attorney's fees.

It is well established in the absence of contract, statute or recognized ground of equity, the court is without authority to order an opposing party to pay attorney's fees. *State v. Thomas,* 585 S.W.2d 606 (Tenn.1979).

An exception to the rule is where the plaintiff's suit has created a "fund", *Tennessee United Paint St. v. D.H. Overmyer Whse. Co.,* 62 Tenn.App. 721, 467 S.W.2d 806 (1971), or has conferred a "substantial benefit" to a class. W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 6045 (1980 & Supp.1982). The "substantial benefit" theory as a basis for awarding attorney's fees was recognized in *Grant v. Look-*

*out Mountain Co.,* 93 Tenn. 691, 28 S.W. 90 (1894), where minority shareholders sued to enjoin the sale of corporate assets. The Supreme Court in *Grant* held the nature of the action was derivative in that "the stockholder does not bring such a suit because his rights have been directly violated, or because the cause of action is his . . .", *id.,* at 697, 28 S.W. 90, and concluded since the action was to benefit the corporation, attorney fees should be paid by the corporation. *Id.,* at 698, 28 S.W. 90. In the instant case, the benefit of additional fees ordered paid by the developer accrued to the entire membership.

The instant case is distinguishable from the case cited by the majority of *Fifth Third Co. v. Mooreland Estates, Etc.,* 639 S.W.2d 292 (Tenn.App.1982). In *Fifth Third,* the developer sued, representing only his own interests, and no pecuniary or other substantial benefits were gained which would inure to the other members. Here, the suit has brought additional funds into the club's treasury which benefit all of the members. "To award attorney's fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 396–397, 90 S.Ct. 616, 627–628, 24 L.Ed.2d 593 (1970).

In *Mills,* the minority shareholders brought a suit to set aside a corporate merger for misleading statements in the proxy materials. In finding for the plaintiffs in their claim for attorneys' fees, the court stated, "the absence of express statutory authorization for an award of attorneys' fees in a suit under § 14(a) does not preclude such an award in cases of this type." *Id.,* at 390, 90 S.Ct. at 624.

I would simply base the decision on the authority of *Knapp* recognizing the standing of the members to maintain the suit and invoke the recovery of a "fund" or the "substantial benefit" theory as the authority for awarding the attorney's fees.