IN THE SUPREME COURT OF TENNESSEE
AT MEMPHIS
November 13, 2007 Session

## J. O. HOUSE v. ESTATE OF J. K. EDMONDSON

**Appeal by permission from the Court of Appeals, Western Section**
**Chancery Court for Shelby County**
**No. 99-0326-02 Arnold B. Goldin, Chancellor**

_____

**No.  W2005-00092-SC-R11-CV - Filed January 25, 2008**

_____

GARY R. WADE, J., dissenting.


I agree with the majority that the trial court did not err by approving the special litigation committee's report. For a variety of reasons, however, I must respectfully dissent with regard to the holding that a minority shareholder suing on behalf of a for-profit corporation can never recover attorney fees under the common fund doctrine. First, I do not believe that failure of the General Assembly to include the common fund doctrine in the Tennessee Business Corporation Act ("TBCA") abrogates our holding in Grant v. Lookout Mountain Co., 28 S.W. 90 (Tenn. 1894). Secondly, the common fund doctrine is not analogous to Tennessee Code Annotated section 48-17-401(d), which authorizes an award of attorney fees against the opposing party. Finally, from a policy standpoint, the application of the common fund doctrine to shareholder derivative suits is desirable to promote corporate accountability.

**I.**

Indeed, Tennessee follows the "American rule," whereby parties in a civil action pay for their own attorney fees absent any agreement to the contrary. The common fund doctrine, however, is a well-recognized exception to the American rule. See Boeing Co. v. Van Gemert, 444 U.S. 472 (1980) (applying the common fund doctrine to a class action). As applied to shareholder derivative suits, the doctrine provides that a minority shareholder who initiates a meritorious suit may recover reasonable fees from the common fund (the settlement or verdict) paid by the shareholders as compensation for the efforts expended for the benefit of all shareholders alike. Grant, 28 S.W. at 90. This compensation is fair, considering that the benefit would not have accrued to the other shareholders, large or small, but for the efforts by the minority shareholder. As Grant put it, "the property [rightfully] restored to the corporation, was set in motion by minority stockholders." Id. at 91. The common fund doctrine is particularly suited for a shareholder derivative action because a minority shareholder is not suing on his own behalf, but on the behalf of the corporate entity, which

is unlikely to file suit against its own leadership unless forced to participate through a derivative action.

As indicated, this Court has previously recognized the common fund doctrine as applied to attorney fees in shareholder derivative suits on behalf of a for-profit corporation. Grant, 28 S.W. at 93 (holding that an "owner of stock in a corporation who sues for himself and all other shareholders successfully, for a wrong done to the corporation, is entitled to be re-imbursed his actual and necessary expenses, including attorneys fees, out of the corporate fund."). However, the majority asserts that this common law rule was repealed by statute in two separate ways: (1) through the codification and subsequent repeal of Tennessee Code Annotated section 48-718; and (2) by the adoption of Tennessee Code Annotated section 48-17-401(d). I cannot agree.

## A. Section 48-718

In 1968, the General Assembly adopted a statute that allowed plaintiffs in derivative actions to recover attorney fees by placing a "lien upon the recovery made by the corporation." This legislation was comparable with our holding in Grant. Tenn. Code Ann. § 48-718(4). The TBCA, which was enacted in 1986, did not include a provision that addresses the subject. This presents the classic question of whether codification of a common law doctrine, followed by subsequent repeal of the statute, implicitly abrogates the common law. Unlike the majority, I do not believe this is always the case. By codifying the common fund doctrine in 1968, the General Assembly enacted a statute that both affirmed and operated concurrently with the common law.[1] Through the adoption of the TBCA, the General Assembly repealed that codification. It did not, in my view, overrule the common law.[2] As American Jurisprudence (Second) points out, statutes are not deemed to repeal the common law by implication unless the legislative intent to do so is clearly manifested. 15A Am. Jur. 2d Common Law § 15 (1995). This legislation does not meet that test.

Silence in a statute is not affirmative law. Simply because the legislature did not provide a statutory remedy does not preclude application of the common law. The United States Supreme Court recognized this principle when awarding attorney fees to a plaintiff in a derivative action brought under section 14(a) of the Securities and Exchange Act. Mills v. Elec. Auto-Lite Co., 396

---

[1] The Arizona Court of Appeals has held that codification of a common law right creates a statutory right in addition to the right a common law. In holding that a shareholder maintained a common law right to inspect corporate records, the court wrote, "[S]ince the legislature has not clearly manifested its intent to repeal the common law rule nor specifically declared the statutory remedy to be exclusive, a shareholder's common law right of inspection, which exists independently of statute, is not abrogated . . . ." Tucson Gas & Elec., Co. v. Schantz, 428 P.2d 686, 690 (Ariz. Ct. App. 1967).

[2] It is notable that neither Westlaw's KeyCite feature nor Lexis's Shepard's feature categorizes Grant as overruled at the time of this case. Application of both research tools to Grant reveals that it is in the "yellow" category. According to Westlaw's website, "[A] yellow flag warns that the case or administrative decision has some negative treatment, but has not been reversed or overruled." See http://web2.westlaw.com/keycite/default. A "yellow" label in Lexis has a similar meaning. While this is not controlling authority, it is persuasive considering that many lawyers rely on these tools while conducting their research.

U.S. 375, 389 (1970). In that case, our highest court ruled that "[t]he absence of express statutory authorization for an award of attorneys' fees in a suit under § 14(a) does not preclude such an award in cases of this type." Id. Likewise, the failure to include the common fund doctrine in the TBCA is insufficient for this Court to fairly infer a legislative "purpose to circumscribe the courts' power to grant appropriate remedies." Id. at 391. The common law should trump legislative silence.

This approach is consistent with our previous decisions on the subject. While upholding the statutory cap on recovery against parents for intentional damage caused by their children, this Court made the following observation:

> While the General Assembly has plenary power within constitutional limits to change the common law by statute, . . . the 'rules of the common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment.'

Lavin v. Jordan, 16 S.W.3d 362, 368 (Tenn. 2000) (emphasis added) (citations omitted).[3] This Court further observed that the statute prevailed only when it conflicted with the common law. Id.

The principle confirmed by our ruling in Lavin does not support the majority's holding. Since 1894, Tennessee courts have recognized that the common fund doctrine applies to shareholder derivative suits. Grant, 28 S.W. at 93. While the common fund doctrine was recognized by section 48-718 of our 1968 corporate legislation, its exclusion in the TBCA, absent express intent to the contrary, "leaves the law as it was before its enactment." Lavin, 16 S.W.3d at 368. The only way to conclude that our rule in Grant has been overruled by the more recent act would be "by implication." Unlike the majority, I am unwilling to draw that implication without a manifest directive from the legislature.

## B. Section 48-17-401(d)

The majority states that its conclusion is merely an "application of the relevant statute, namely section 48-17-401(d) . . . ." However, I am unable to find anything in that section explicitly barring a plaintiff from recovering reasonable attorney fees from the common fund. Furthermore, I do not find any helpful comparison between the common fund doctrine and this provision of the TBCA.

Section 48-17-401(d) directs a plaintiff to pay the defendant's attorney fees if the suit was not commenced with "reasonable cause." The policy behind section 48-17-401(d) is to discourage frivolous derivative suits and compensate defendants that are harmed by the costs incurred in the

---

[3] The majority cites to State v. Turner, 193 S.W.3d 522, 527 (Tenn. 2006), for the proposition that "a change in the law by statute raises a presumption that a departure from the old law was intended." What Turner actually said was "When the legislature makes a change in the language of a statute, we must assume that it was deliberate." Id. (emphasis added). This case does not involve a change in the language of a statute. Because the common fund doctrine is not addressed in the TBCA, there is no language of two different versions of a statute to compare in this case.

defense of baseless litigation. The policy goals of the common fund doctrine are completely different:

> First, the doctrine prevents the beneficiaries of legal services from being unjustly enriched by requiring them to pay for those services according to the benefit received. Second, the doctrine serves to spread the costs of litigation proportionally among all of the beneficiaries so that the plaintiff does not bear the entire burden alone.

Kline v. Eyrich, 69 S.W.3d 197, 204 (Tenn. 2002). The objective of the common fund doctrine is to "impose fees on the class that would have had to pay the fees if it had brought the suit for its benefit." 19 Am. Jur. 2d Corporations § 2487 (1995). Just as the 1986 legislation discourages a frivolous suit, our common law encourages a meritorious one.

Section 48-17-401 and the common fund doctrine differ in other aspects besides policy goals. In section 48-17-401(d), the defendant's attorney fees would be paid by the opposing party. Under the doctrine, the minority shareholder's attorney fees would be paid from a common fund before being distributed to the shareholders. In other words, "the obligation to reimburse the successful plaintiffs in a derivative action falls on the corporation, and not on the losing party, such as the directors charged with mismanagement." 19 Am. Jur. 2d Corporations § 2487 (emphasis added). The fees are assessed against the fund or property itself as fair compensation for "securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common." Travelers Ins. Co. v. Williams, 541 S.W.2d 587, 589 (Tenn. 1976)).

In short, these are two different concepts. In my view, nothing in section 48-17-401(d) supports the abrogation of the common fund doctrine. While this Court's role is to apply the law as written and not second-guess the wisdom of the legislature, I simply find no clear statutory directive that mandates abrogation of the common law.[4]

## II.

The majority opinion bases its conclusion solely on the grounds of statutory construction. Public policy considerations, in my view, support a different result.

The common fund doctrine enables shareholders to "pursu[e] justified claims for the benefit of corporations in which they have a valid interest." Hannewald v. Fairfield Cmty., Inc., 651 S.W.2d 222, 230 (Tenn. 1983). Here, the minority shareholder owned only 5% of the shares. A verdict or settlement in a derivative action would have to be $200,000 or above for a minority shareholder to recoup a fee of $10,000–minimal compensation for a suit of that matter. The cost of litigation could

---

[4] Our holding in Grant concurs with many of our sister states. See, e.g., Decatur Mineral & Land Co. v. Palm, 21 So. 315, 316 (Ala. 1896); Knutsen v. Frushour, 436 P.2d 521, 525 (Idaho 1968); State ex rel. Weede v. Bechtel, 56 N.W.2d 173, 188 (Iowa 1952); Bosch v. Meeker Cooperative Light & Power Ass., 101 N.W.2d 423, 425 (Minn. 1960); Fitzgerald v. Bass, 252 P. 54, 55 (Okla. 1927). As stated, the common fund doctrine is also recognized by the federal courts. Mills, 396 U.S. at 392.

be so burdensome as to deter otherwise valid claims unless the misappropriation is substantial. Derivative suits are risky and difficult to prove even when there is clear misconduct by corporate fiduciaries. A shareholder is less inclined to seek deserved relief when doing so would result in a net loss.[5]

The common fund doctrine–the exception to the American rule–arose as an equitable doctrine. 20 Am. Jur. 2d Costs § 66 (1995). In 1970, former Justice Harlan wrote that allowing a plaintiff to recoup his expenses when conveying a significant benefit to the other shareholders is simply fair and equitable. Mills, 396 U.S. at 392. He believed that a contrary ruling would be unjust: "To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." Id. That assessment makes perfect sense.

For these reasons, I must dissent. I would not overrule Grant and would hold that a plaintiff in a derivative action on behalf of a for-profit corporation can recover reasonable attorney fees under the common fund doctrine.

_____
GARY R. WADE, JUSTICE

---

[5] An alternative is a pro bono attorney, but as the amicus curiae states: "Given the complex nature of derivative litigation and the massive investment of work that it requires, this is neither fair nor realistic."