IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 4, 2002 Session

## PATRICK MCGEE v. TIMOTHY BEST, ET AL.

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 99-3-1     The Honorable Irvin H. Kilcrease, Jr., Chancellor**

_____

### No. M2001-01365-COA-R3-CV - Filed June 18, 2002

_____

This case involves the termination of membership and employment of a member of an LLC. The terminated member and employee filed suit against the LLC and the other members thereof alleging breach of contract, breach of covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, unfair competition, fraud, and misrepresentation. The trial court granted defendants' motion for judgment on the pleadings as to all claims except the claim for breach of contract and breach of the covenant of good faith and fair dealing. Thereafter, the trial court granted defendants' motion for summary judgment on the remaining two claims. Plaintiff appeals. We affirm, modify, reverse in part, and remand.

**Tenn. R. Civ. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed, Modified, Reversed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

G. Kline Preston, IV, Nashville for Appellant, Patrick McGee

Tim K. Garrett, Nashville, For Appellees, Timothy Best, Robert Frank, David Ingram, Ingram Entertainment, Inc., and McGee, Best, Frank & Ingram LLC

### OPINION

On January 4, 1999, the plaintiff, Patrick McGee (hereinafter "McGee"), filed a "Complaint and Application for Extraordinary Relief" in the Chancery Court for Davidson County, Tennessee against the defendants, Timothy Best (hereinafter "Best"), Robert Frank (hereinafter "Frank"), David Ingram (hereinafter "Ingram"), Ingram Entertainment, Inc. (hereinafter "IEI") and McGee, Best, Frank and Ingram LLC (hereinafter "MBF&I"), alleging a violation of the LLC Operating Agreement and the Tennessee Limited Liability Act; breach of contract; breach of fiduciary duty; and breach of the covenant of good faith and fair dealing.

McGee avers in the complaint that in January of 1997, he, along with Frank, Best and K. K. Wiseman, formed the Nashville, Tennessee advertising firm of McGee, Best, Frank & Wiseman, and he owned more than a 50% interest. The complaint states that McGee had been the president of another advertising firm prior to the formation of McGee, Best, Frank and Wiseman. In May of 1997, the members of McGee, Best, Frank & Wiseman converted the firm into an LLC, and IEI joined as a member with David Ingram, acting as the representative of IEI and as an officer of the LLC. After the formation of the LLC, the ownership interests were as follows: McGee owned a 33 1/3% membership share; IEI owned a 33 1/3% membership share and Frank and Best each owned a 16 2/3% membership share. The LLC name was then changed to McGee, Best, Frank & Ingram, LLC.

The complaint avers that the members executed an "Operating Agreement" on April 22, 1997, which provides in pertinent part:

1.1 **Formation.** The Members hereby form a limited liability company pursuant to the Tennessee Limited Liability Company Act (the "Act").

1.2 **Name.** The name of the limited liability company shall be McGee, Best, Frank & Ingram LLC (the "Company").

\* \* \*

5.4 **Termination of Employment for Cause.** In the event any Member employed by the LLC commits an act described in the definition of "Cause" in Section 10.4(f), such Member's employment by the LLC may be terminated by a vote of the other Members holding at least 70% of the remaining Membership Interests.

\* \* \*

5.7 **No Exclusive Duty.** Except as otherwise specifically provided below, each officer or Member may have other business interests and may engage in other activities in addition to those relating to the LLC. Neither the LLC nor any Member shall have any right to share or participate in such other investments or activities of any other Member based on the fact that each are members of the LLC. No Member shall incur any liability to any other Member or the LLC as a result of engaging in any other business or venture. Notwithstanding the foregoing, the Members shall not have other business interests and may not engage in activities

-2-

which compete in any respect, directly or indirectly, with the business of the Company or which would represent a conflict of interest; provided, however, that Ingram Entertainment Inc. may continue to own, operate and manage Ingram Design Group, Inc., its in-house ad agency, and/or any successors to Ingram Design Group Inc.

6.4     ***Action Without a Meeting.***  Action required or permitted to be taken at a meeting of the Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by the Members holding a majority of the Membership voting power entitled to vote (or any greater proportion required by this Agreement, the Articles, or the Act) and delivered to the Secretary of the Company for filing with the Company records.

*   *   *

10.4    ***Option to Purchase Upon Termination of Employment.***  In the event that the employment of any Member who is a full-time employee of the Company is terminated, the Company shall have the option to purchase the Membership Interest of the terminated Member for the Formula Value (as defined in (e) below) of the terminated Member's Membership Interest (as shown on the books of the Company as at the end of the month in which the event occurs which gives rise to the Company's option), all in accordance with the following terms and conditions:

*   *   *

(e) ***Formula Value.***  The "Formula Value" of a Member's Membership Interest shall mean the greater of (i) or (ii) below; provided, however, that in the event the Member's employment is terminated for "Cause" (as hereinafter defined), the "Formula Value" of such Member's Membership Interest shall mean the lesser of (i) or (ii) below:

(i) the amount of the capital account attributable to that Membership Interest; or

-3-

(ii) three times the average of the amount of income allocated or allocable to that Membership Interest (under Section 4.1 (a)) during each of the three preceding 12 month periods (or, if less than 36 months, such shorter period during which such Member had such Membership Interest).

(f) ***Definition of Cause.*** Only for purposes of this Section 10.4 and Section 5.4 hereof, "Cause" shall mean any act that is materially inimical to the best interests of the Company and that constitutes on the part of the Member personal dishonesty, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, or willful violation of any law, governmental rule or regulation.

\*   \*   \*

12.5    ***Binding Effect.*** Except as herein otherwise provided to the contrary, this Agreement shall be binding upon, and inure to the benefit of, the Members and their respective heirs, executors, administrators, successors, transferees and assigns.

McGee further alleges in the complaint that Tri-Vision International LTD (hereinafter "Tri-Vision") is a client of MBF&I and is the exclusive licensee of the "v-chip", which is an electronic device designed to permit parents to control their children's access to certain types of television programming based on rating codes. The complaint states that IEI is the primary distributor of the v-chip for Tri-Vision in the United States and that MBF&I has planned, produced and placed advertising for Tri-Vision in various markets throughout the United States. McGee avers that Tri-Vision is indebted to MBF&I in the amount of approximately $553,000 for the advertising services and IEI is indebted to Tri-Vision in the amount of $750,000 for the delivery of v-chip products that IEI will distribute. The complaint alleges that "IEI's failure to pay that obligation has hampered Tri-Vision's ability to pay the monies it owes to the LLC."

McGee further avers that IEI has directed MBF&I to reserve the entire Tri-Vision indebtedness of $553,000 as a bad debt on the firm's financial statements and that he was not advised of this decision until after it was made. The complaint further alleges that the accrual of the Tri-Vision account as a bad debt has created financial problems and states:

-4-

18.     The conduct of IEI and Ingram in artificially creating and then attempting to benefit from the LLC's financial problem violates their fiduciary duties owed to McGee and to the LLC. Additionally, IEI has a conflict of interest and has violated member standards under TCA § 48-240-102. Ingram and IEI have done so by failing to act in good faith, prudently, and in the best interests of the LLC; they have directed that the LLC accrue as a bad debt the monies owed by Tri-Vision, when IEI has contributed to, if it has not actually caused, Tri-Vision's inability to pay the LLC by IEI's own failure to pay Tri-Vision the monies owed for the distribution of Tri-Vision's v-chip products.

The complaint further alleges that on December 31, 1998, Best, Frank and IEI executed a document entitled "Action Taken on Written Consent of the Members of McGee, Best, Frank and Ingram LLC," which provides in pertinent part:

The undersigned members (the"Members"), being the holders of 66 2/3% of the membership interests, and 100% of the membership interests other than those held by Patrick McGee, of McGee, Best, Frank & Ingram LLC, a Tennessee limited liability company (the "Company"), do, as of this 31st day of December, 1998, hereby consent to and take the following actions, as evidenced by their signatures below:

WHEREAS, Patrick McGee, the Chief Manager and a member of the Company ("McGee"), has committed acts described within the definition of "Cause," as set forth in Section 10.4(f) of the Company's Operating Agreement dated April 22, 1997 (the "Operating Agreement"); and

WHEREAS, as a result of such acts, the Members believe it is advisable and in the best interest of the Company to (i) remove McGee from the office of Chief Manger of the Company, pursuant to Section 5.13 of the Operating Agreement; (ii) terminate McGee's employment with the Company, pursuant to Section 5.4 of the Operating Agreement; and (iii) purchase McGee's membership interest, pursuant to Section 10.4 of the Operating Agreement.

NOW, THEREFORE, BE IT RESOLVED, that the Members hereby remove McGee from the office of Chief Manager of the Company pursuant to Section 5.13 of the Operating Agreement, and appoint Robert M. Frank to serve in his stead, until Robert M. Frank's successor is duly appointed by the company's members;

RESOLVED FURTHER, that the Members hereby terminate McGee's employment with the Company pursuant to Section 5.4 of the Operating Agreement;

RESOLVED FURTHER, that the Members hereby approve the Company's exercise of its option to purchase McGee's 33 1/3% membership interest in the Company, pursuant to the terms and conditions of Section 10.4 of the Operating Agreement, and authorize the Company's officers, and each of them, to cause the Company to pay McGee a purchase price for such interest equal to the Formula Value (for Cause), as such term is defined in Section 10.4(e) of the Operating Agreement, and to execute and deliver such documents and take such actions, on behalf of the Company, as any of them may deem appropriate to consummate the purchase of McGee's membership interest on the terms and conditions set forth in Section 10.4 of the Operating Agreement; and

RESOLVED FURTHER, that the Members hereby (i) authorize the Company's officers, and each of them, to execute, deliver and/or file all such other documents, and to take all such other actions, as such officers may deem necessary to accomplish the foregoing; and (ii) ratify and approve all such actions previously taken by the Members or the Company's officers consistent with the foregoing resolutions.

The complaint further avers that Best, Frank and IEI also sent McGee a letter dated December 31, 1998 which provides in pertinent part:

This letter is to advise you that, effective immediately, your employment with McGee, Best, Frank & Ingram LLC ("the Company") is hereby terminated for cause as set forth in Section 5.4 of the Operating Agreement of the Company. You are hereby relieved of any and all duties, rights and responsibilities as an employee of the Company. This action also serves to relieve you of your duties, rights and responsibilities as Chief Manager of the Company. You are not to report to work on Monday, January 4 or at any time thereafter.

As the attached document reflects, this action has been taken by vote of the undersigned members of the Company, who represent all of the remaining Membership Interests. Your termination is the result of your actions which have been materially inimical to the best interests of the Company and which constitute willful misconduct and

-6-

intentional failure to perform stated duties. More specifically, despite instructions to the contrary and despite the requirements of the Operating Agreement, you have taken actions without necessary approval of other Members of the Company, in violation of Section 5.3. Your willful misconduct and intentional failure to perform stated duties, for whatever reason, has undermined your ability to remain as Chief Manager or as an employee of the Company.

On behalf of the Company, we also inform you that, in accordance with Section 10.4 of the Operating Agreement, the Company hereby exercises its option to purchase your Membership Interest. The amount for which your Membership Interest will be purchased will be determined in accordance with the Formula Value set forth in Section 10.4(e) of the Operating Agreement. In accordance with Section 10.4(d) of the Operating Agreement, we anticipate closing the purchase of your Membership Interest by no later than January 31, 1999. We will contact you in the near future with an exact date for that closing and with the exact amount of the purchase price in accordance with the Formula Value.

We also wish to remind you of your obligations under an Employment & Non-solicitation Agreement, which you signed and which became effective January 1, 1998 and which we consider a very important asset of the Company. We trust that you will abide by your word and not conduct yourself in any manner that would be in violation of that covenant.

In sum, McGee alleges that the defendants violated the Operating Agreement, and the Tennessee Limited Liability Act by purporting to terminate him without a meeting or the waiver of a meeting. Furthermore, he avers that the defendants breached the agreement and their fiduciary duty to the LLC and the covenant of good faith and fair dealing by purporting to terminate his employment for "cause" when no cause existed and by attempting to acquire his membership interest, without having any right to do so.

On February 4, 1999, the defendants filed an answer denying the material allegations of the complaint and aver that in any event McGee was an employee at will by virtue of an "Employment & Non-Solicitation Agreement," which provides in pertinent part:

NOW, THEREFORE, in consideration of the premises and covenants stated below, the parties agree as follows:

1. **Term**. This amended employment agreement is effective as of January 01, 1998, and shall supersede any prior employment

agreements between Employee and MBF&I, written or oral, in all respects. The new term of employment is for an indefinite term commencing the effective date of this agreement stated immediately above (the "Term"). This agreement shall continue indefinitely at the will of either party unless and until terminated by either party upon no less than 15 days notice unless for good cause in which event termination by either party may be immediately.

\*   \*   \*

6. **Covenant Not To Compete**. Employee agrees that for a period of eighteen (18) months following termination of employment, Employee shall not, directly or indirectly, in any territory or in any manner or capacity, as agent, partner, officer, employee, sales person, consultant, or otherwise, engage in any activity which solicits and/or services any company which is or was ever a client or active prospect of MBF&I termination (sic) of Employee's employment with MBF&I. In the event Employee violates the foregoing covenant, the period of time shall be extended by the amount of time Employee was in violation of same.

\*   \*   \*

10. **Violation of Agreement**. Employee acknowledges that any violation or threatened violation of these covenants will cause immediately and irreparable injury to MBF&I, and that the remedies at law for any such violation or threatened violation may be inadequate, and that MBF&I shall, in addition to any other rights and remedies available in law or in equity, be entitled to temporary and/or permanent injunctive relief, and specific performance, without the necessity of proving actual damages or posting bond. Additionally, MBF&I shall be entitled to recover any damages it may have suffered as a result of Employee's breach of these covenants.

\*   \*   \*

11. **Miscellaneous.** Employee represents that he/she is not a party to any agreement which is in conflict with this Agreement and is free to render the services contemplated herein. This Agreement shall be constructed and enforced in accordance with Tennessee law, and any action arising from this Agreement may be maintained in a court of competent jurisdiction in Nashville, Tennessee or at MBF&I's option, where any breach occurs. MBF&I shall be entitled to recover its

> expenses, including attorney fees, incurred as a result of any violation
> of this Agreement by Employee.

The answer contains a counter-claim which was subsequently voluntarily dismissed.

Plaintiff also amended his complaint on February 25, 2000, which includes allegations of breach of contract, breach of fiduciary duty, fraud and negligent misrepresentation. The amendment to the complaint goes into great detail concerning the debt of IEI with Tri-Vision and the debt of Tri-Vision to the LLC. In essence, the complaint alleges that IEI was aware of financial affairs and conditions of the LLC and the fact that the LLC was owed a large amount of money by Tri-Vision. McGee alleges that, without any agreement on his part, defendants reserved as a bad debt approximately $200,000.00 which had the effect of reducing the assets on the balance sheet of the LLC. McGee further avers that Ingram, acting on behalf of IEI, instructed the LLC to purchase substantial media ads for the marketing of the V-Chip and that this was done by McGee on behalf of the LLC, relying on IEI's obligation to pay its debt to Tri-Vision. In essence, he alleges that IEI failed to inform the LLC that it did not intend to honor its contractual obligation to Tri-Vision so that Tri-Vision could pay the substantial amount owed the LLC. He avers that he objected to the writing down of the Tri-Vision accounts receivable, which were in fact collectable, as later proved to be fact. McGee states that the acts of IEI in relation to Tri-Vision matters were acts by IEI as a member of the LLC and that the acts pursuant to Paragraphs 5.1 and 5.2 of the Operating Agreement constitute a conflict of interest and, therefore, a breach of the provisions of Paragraph 5.7. The amendment further avers that the acts of IEI and the other defendants constitute a breach of contract, breach of fiduciary duty, and a breach of covenant of good faith and fair dealing, unfair competition and conspiracy, and particularly alleges that the designation of the Tri-Vision account as a bad debt when it was in fact collectable resulted in a loss to plaintiff. The amendment further alleges that the failure of IEI to disclose the fact that it was not going to pay the contractual obligation operated as a fraud on the LLC, and the LLC was induced to make media buys for the advertising program. In the alternative, the amendment alleges that if there was not a deliberate fraud, it was at the very least a negligent misrepresentation.

Defendants' answer to the amended complaint admits the general averments of the complaint concerning organization and membership of the LLC. The answer denies the allegations concerning the Tri-Vision account and avers that the account is presently uncollectable. The remaining allegations of the amended complaint are denied and issue is joined thereon.

On October 10, 2000, the defendants filed a motion for partial judgment on the pleadings, stating in pertinent part:

> 4. Defendants submit that, based upon the pleadings already
> in the record, Plaintiff cannot state (or has not stated) a claim upon
> which relief can be granted with respect to the following causes of
> action: breach of fiduciary duty, breach of covenant of good faith and

fair dealing, civil conspiracy, unfair competition, fraud, and negligent misrepresentation.

After a hearing on November 3, 2000, the trial court filed its order on November 15, 2000, granting the defendants' motion for partial judgment on the pleadings and dismissing the plaintiff's following causes of action: breach of fiduciary duty; civil conspiracy; unfair competition, fraud and misrepresentation. The trial court's order provides in pertinent part:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the following causes of action are dismissed and that, as to these causes of action, Defendants' motion is granted for the following reasons:
>
> 1. Cause of Action for Breach of Fiduciary Duty. Plaintiff has alleged that the Defendants breached their fiduciary duty to Plaintiff in various ways. The Court finds that the Tennessee Limited Liability Corporation Act ("the Tennessee LLC Act") does not create a fiduciary duty between members of an LLC. An LLC is a creature of statute, and any duty which members owe must be set forth in the statute. However, the Tennessee LLC Act does not create a fiduciary duty between members of an LLC. Therefore, Plaintiff's cause of action based upon a fiduciary obligation owing to him individually does not state a cause of action recognized under the Tennessee LLC Act.
>
> 2. Cause of Action for Civil Conspiracy. In the Amended Complaint, Plaintiff makes mention in only one phrase of an allegation of a civil conspiracy. Amended Company at ¶ 85. Plaintiff apparently bases his cause of action for civil conspiracy upon that allegation alone because the Court is unable to find in the Amended Complaint other facts or allegations upon which such cause of action is based. The Court finds that the Amended Complaint is not sufficient in this regard because it does not set forth the facts upon which the cause of action for civil conspiracy is based and fails to inform Defendants of the basis for this cause of action.
>
> 3. Cause of Action for Unfair Competition. Plaintiff alleges that the Defendants engaged in unfair competition. However, the Court finds that the Amended Complaint is not sufficient in setting forth this cause of action because it does not set forth the facts upon which the cause of action is based and fails to inform Defendants of the basis for this cause of action.

4. Causes of Action for Fraud and Misrepresentation. Plaintiff alleges the causes of action of fraud and misrepresentation. Plaintiff alleges that certain information was withheld from him – either intentionally or negligently – and that this information was material in the manner by which he conducted the affairs of the LLC. Plaintiff does not allege that he conducted his own personal affairs in reliance upon any such material information or that he obligated himself personally in reliance thereon. Plaintiff does allege that he was injured personally, *see* Amended Complaint at ¶ 94, but such alleged injury appears to be derivative. To the extent that Plaintiff relies upon a derivative injury, the Plaintiff cannot present such causes of action in his own name because he lacks individual standing to do so.

However, Plaintiff may be claiming that his personal injury was his termination from employment. If so, such injury certainly is personal and not derivative, but that claim arises out of the employment relationship and does not create a cause of action for fraud or misrepresentation. That is, the Plaintiff's employment relationship is in the nature of a contractual relationship and Plaintiff's allegation that such termination was wrongful does not elevate the claim to one of fraud and/or misrepresentation.[1] The contractual employment relationship defines the duties of the parties thereto and if allegedly breached, the cause of action lies in contract and not in fraud and/or misrepresentation.

Defendants' Motion for Partial Judgment on the Pleadings with respect to the remaining causes of action which were included in the Motion - namely the cause of action for breach of contract under Section 5.7 of the Operating Agreement and the cause of action for breach of the covenant of good faith and fair dealing - is denied.

All other matters are reserved.

On December 13, 2000, the plaintiff filed a motion for interlocutory appeal as to his claim for breach of fiduciary duty and the trial court denied this motion by order filed January 24, 2001.

On February 12, 2001, defendants moved for summary judgment as to the plaintiff's remaining claims of breach of contract and breach of the covenant of good faith and fair dealing.

---

[1] The trial court recognized that the nature of the employment relationship - whether an "at-will" relationship or whether Plaintiff could be terminated only for "cause" - is a matter of dispute.

-11-

After a hearing on April 27, 2001, the trial court filed its "Memorandum Order" on May 7, 2001, which provides:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. In ruling on a motion for summary judgment, the Court must begin its analysis by determining whether the moving party has satisfied its burden of showing the absence of a genuine issue of material fact. If so, the Court then must determine whether the party opposing the motion has come forward to show that there is a genuine issue of material fact which would require a trial. *See generally* Tenn.R.Civ.P. 56. In assessing whether a fact is material, the Court considers the substantive law supporting the causes of action upon which Plaintiff seeks relief. To determine whether a dispute as to a fact is genuine, the Court determines whether a reasonable juror could find for the Plaintiff on that fact given the entire record, but without making any credibility determinations. In this assessment, the Court must make all reasonable inferences in favor of the non-moving party.

2. Plaintiff is a former employee and member of Defendant McGee, Best, Frank & Ingram LLC ("MBFI" or "the LLC"). He alleges that Defendants breached the Operating Agreement of the LLC when they terminated his employment and when they took action without a meeting under Section 6.4 of the Operating Agreement. Plaintiff's remaining claims are as follows: (a) Defendants wrongfully terminated his employment in violation of the Operating Agreement, (b) Defendants took corporate action without a meeting in violation of the Operating Agreement, (c) Defendants engaged in certain activities which constituted a "conflict of interest" in violation of the Operating Agreement, and (d) Defendants breached the implied covenant of good faith and fair dealing with respect to the Operating Agreement.

3. In January 1997, Plaintiff, along with Tim Best ("Best"), Bobby Frank ("Frank"), and Ms. K. K. Wiseman, formed an advertising agency known as McGee, Best, Frank & Wiseman, LLC. In February 1997, Ms. Wiseman resigned, and, in April 1997, Ingram Entertainment Inc. ("IEI") joined the LLC, which became known as MBFI.

4. Membership Interests among the four (4) members were as follows: Plaintiff owned 33 1/3%; IEI owned 33 1/3%; Frank owned 16 2/3%; and Best owned 16 2/3%. Plaintiff was appointed Chief

Manager, with responsibility for the day-to-day operation of the company, and Frank and David Ingram ("Ingram") became the Secretary and Vice-President, respectively.

5. On April 22, 1997, the members of MBFI signed an Operating Agreement. The Operating Agreement contemplates that the LLC's individual members – Plaintiff, Frank and Best – would be employees of the LLC.

6. In January 1998, Plaintiff signed an Employment & Non-Solicitation Agreement ("the Employment Agreement"). However, in filings before this Court, in discovery responses, and in his deposition testimony, Plaintiff has taken the position that this Employment Agreement is invalid and unenforceable. Without ruling on the validity of the Employment Agreement, the Court finds that the Plaintiff is estopped from now asserting any claim pursuant to the Employment Agreement.

7. In the parties' respective motion papers, there is much discussion regarding the business relationship between IEI and Tri-Vision International LTD ("Tri-Vision") as a result of IEI's distribution of the "v-chip," one of Tri-Vision's products. There also is much discussion regarding the business relationship between MBFI and Tri-Vision as a result of MBFI's advertising services relating to the sale of this same product. Likewise, there is much discussion regarding Tri-Vision's payment history with MBFI. The Court finds this historical discussion helpful to understanding the circumstance which led to the Plaintiff's termination of employment. However, the Court does not find the facts relating to these business relationships as material given the substantive law supporting Plaintiff's causes of action before the Court.

8. There is no dispute that, by December 1998, MBFI had a significant account receivable by which Tri-Vision owed MBFI approximately $553,000.00. On December 21, 1998, a meeting was held among the members, at the offices of IEI, regarding MBFI's financial condition and its impact on the members' working relationships. The discussions in that meeting and soon thereafter further complicated the working relationships among the members.

9. On December 25, 1998, in a telephone conversation with Tom Lunn, representing IEI, Best and Frank discussed their dilemma. In response to Lunn's inquiry how they wanted to proceed, Best and

Frank told Lunn that they thought it best to proceed with the LLC without Mr. McGee. On the very next day, December 26, Mr. Frank informed Plaintiff of their decision, which action was later finalized on December 31, in a formal consent, signed by these three members, agreeing to take action without a meeting, and terminated the employment of Plaintiff.

10. Plaintiff was provided an official notice, effective December 31, 1998, that his employment was terminated.

11. On Plaintiff's claim that the termination of his employment was a breach of the Operating Agreement because there was no "cause" for termination, the Court CONCLUDES that plaintiff cannot establish such cause of action as a matter of law. In order for Plaintiff to establish his claim, he must first show that he could only be terminated for cause. Otherwise, his wrongful termination claim cannot survive. In Tennessee, a contract of employment for an indefinite term is a contract at will and can be terminated by either party, at any time, either with or without cause. *Rose v. Tipton County Pub.Works Dep't.,* 953 S.W.2d 690, 691 (Tenn. Ct. App. 1997); *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. Ct. App. 1985). In fact, in Tennessee, there is a presumption that an employee is an employee at will. *Rose*, 953 S.W.2d at 691-92. Here, there is no provision in the Operating Agreement which guarantees Plaintiff, or any other Member/Employee, a specific term or duration of employment. There also is no provision in the Operating Agreement, or any other agreement in the record, which provides that Plaintiff could be terminated only for cause. As a matter of law, Plaintiff was an employee at will. Plaintiff's breach of contract claim, premised solely upon his view that he could be terminated only for cause, fails as a matter of law.

12. On Plaintiff's allegations that the Defendants' action without meeting violated the Operating Agreement and the Tennessee Limited Liability Company Act, the Court CONCLUDES that the Plaintiff cannot establish this claim as a matter of law. Section 6.4 of the Operating Agreement provides:

> Action required or permitted to be taken at a meeting of the Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by the Members

holding a majority of the membership voting power entitled to vote (or any greater proportion required by this Agreement, the Articles, or the Act). . . .

Operating Agreement, § 6.4. In order to determine "the Membership voting power entitled to vote" on the issue of Plaintiff's termination, the Court again looks to the Operating Agreement, which provides that a member's employment may be terminated "for cause" by a "vote of the ***other Members*** holding at least 70% of ***the remaining Membership Interests***." Operating Agreement, § 5.4 (emphasis added). Thus, in this instance, the "Membership Interests," voted 100% to take action without a meeting and to terminate Plaintiff's employment.

13. On Plaintiff's breach of contract claim based upon an alleged "conflict of interest" in violation of the Operating Agreement, the Court CONCLUDES that the Plaintiff has abandoned that claim based upon Plaintiff's responsive papers, which do not address this issue. Since that aspect of the motion is not opposed, the Court finds that there is no genuine issue of material fact on that claim and grants Defendants' motion dismissing it.

14. On Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, the Court CONCLUDES that Plaintiff cannot establish that claim as a matter of law. The Court must look to the terms of a contract to determine the standard by which good faith is measured. ***Wallace v. National Bank of Commerce***, 938 S.W.2d 684 (Tenn. 1996). The performance of a contract according to its terms cannot be characterized as bad faith. ***TSC Industries, Inc. v. Tomlin***, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987). Here, since the Operating Agreement allowed the very actions which Defendants took in terminating Plaintiff's employment, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing.

15. The Court further finds and concludes that Defendant David Ingram is not a proper Defendant. Mr. Ingram was not a party to the Operating Agreement.

16. WHEREFORE, the Court finds that there is no genuine issue of any material fact on Plaintiff's various claims and that Defendants are entitled to judgment as a matter of law.

-15-

IT IS SO ORDERED. This matter is dismissed in its entirety.
Costs are assessed against Plaintiff for which execution may issue.

On May 30, 2001, the defendants moved for discretionary costs and by order filed July 2, 2001, the trial court awarded defendants their discretionary costs in the amount of $1,871.00.

The plaintiff appeals and presents the following seven (7) issues as stated in his brief:

I. Whether the trial court erred in granting the defendants' motion for summary judgment and in dismissing the plaintiff's cause of action for breach of contract.

II. Whether the trial court erred in dismissing the plaintiff's action for breach of the covenant of good faith and fair dealing.

III. Whether the trial court erred in dismissing the plaintiff's causes of action for breach of fiduciary duty.

IV. Whether the trial court erred in dismissing the cause of action for civil conspiracy.

V. Whether the trial court erred in dismissing the plaintiff's causes of action for fraud and negligent misrepresentation.

VI. Whether the trial court erred in dismissing the plaintiff's causes of action for unfair competition.

VII. Discretionary Costs.

We have summarized these seven (7) issues into two (2) main issues.

One main issue for review is whether the trial court erred in granting the defendants' motion for partial judgment on the pleadings dismissing the plaintiff's claims for breach of fiduciary duty; civil conspiracy; unfair competition; and fraud and misrepresentation.

When a motion for judgment on the pleadings is made by the defendant, it is in effect a motion to dismiss for failure to state a claim upon which relief can be granted. 3 Nancy F. MacLean & Bradley A. MacLean, Tennessee Practice 190 (2nd ed.1989). A motion to dismiss for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure. *Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments in the complaint but asserts that such facts cannot constitute a cause of action. *Id*. In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally

in favor of the plaintiff taking all of the allegations of fact therein as true. ***Humphries v. West End Terrace, Inc.***, 795 S.W.2d 128, 130 (Tenn. Ct. App. 1990). A complaint should not be dismissed upon such a motion " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the] claim that would entitle [the plaintiff] to relief' ". ***Id.*** (quoting ***Fuerst v. Methodist Hosp. South***, 566 S.W.2d 847, 848 (Tenn. 1978)). In the instant case, the complaint seeks recovery based on a written instrument and a determination of the meaning of the instrument is a question of law. Therefore, our review of the trial court's order is de novo on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d 722, 723 (Tenn. 1997).

The second main issue for review is whether the trial court erred in granting the defendants' motion for summary judgment dismissing the plaintiff's claims for breach of contract and breach of covenant of good faith and fair dealing.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.*** In ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

***Id.*** at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. ***Bain***, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is ***de novo*** on the record before this Court. ***Warren v. Estate of Kirk***, 954 S.W.2d at 723.

In ***Warren v. Metropolitan Gov't of Nashville & Davidson County***, 955 S.W.2d 618 (Tenn. Ct. App. 1997), we discussed the role of a Court in interpreting a contract:

> Courts are to interpret and enforce the contract as written, according to its plain terms. ***Petty v. Sloan***, 197 Tenn. 630, 277 S.W.2d 355, 358 (1955); ***Home Beneficial Ass'n v. White***, 180 Tenn. 585, 177 S.W.2d 545, 546 (1944). We are precluded from making new contracts for the parties by adding or deleting provisions. ***Central Adjustment Bureau, Inc. v. Ingram***, 678 S.W.2d 28, 37 (Tenn. 1984); ***Shell Oil Co. v. Prescott***, 398 F.2d 592 (6th Cir.1968). When clear contract language reveals the intent of the parties, there is no need to apply rules of construction. An ambiguity does not arise in a contract merely because the parties may differ as to interpretation of certain of its provisions. ***Oman Constr. Co. v. Tennessee Valley Auth.***, 486 F.Supp. 375 (M.D.Tenn.1979). A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one; a strained construction may not be placed on the language used to find an ambiguity where none exists. ***Empress Health & Beauty Spa, Inc. v. Turner***, 503 S.W.2d 188, 190-91 (Tenn.1973). We are to consider the agreement as a whole in determining whether the meaning of the contract is clear or ambiguous. ***Gredig v. Tennessee Farmers Mut. Ins. Co.***, 891 S.W.2d 909, 912 (Tenn. Ct. App.1994). If a contract is plain and unambiguous, the meaning thereof is a question of law for the court. ***Petty v. Sloan***, 277 S.W.2d at 358.

*Id.* at 622-23.

Furthermore, the rule has been well established in this state that a contract of employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause. ***Randolph v. Dominion Bank of Middle Tennessee***, 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991)(citing ***Graves v. Anchor Wire Corp.,*** 692 S.W.2d 420 (Tenn. Ct. App. 1985). In ***Payne v. Western & Atl. Ry. Co.***, 81 Tenn. 507 (1884), the Supreme Court said:

> All may dismiss their employees at will, be they many or few, for good cause, for no cause or even for cause morally wrong without being thereby guilty of legal wrong.

***Randolph v. Dominion Bank of Middle Tennessee***, 826 S.W.2d at 478 (quoting ***Payne v. Western & Atl. Ry. Co.***, 81 Tenn. at 519-520); *see also **Harney v. Meadowbrook Nursing Center***, 784 S.W.2d 921, 922 (Tenn. 1990).

We will now address the appellant's first main issue.

BREACH OF FIDUCIARY DUTY

The plaintiff argues that the trial court erroneously held that the plaintiff's claims based upon an alleged breach of fiduciary duty owed to him individually by the other members must fail as a matter of law because there is no fiduciary duty between, or among, individual members of a Limited Liability Corporation. We disagree. Tenn. Code Ann. § 48-240-102(a) (2002) provides:

> (a) FIDUCIARY DUTY OF MEMBERS OF MEMBER-MANAGED LLC. Except as provided in the articles or operating agreement, every member of a member-managed LLC must account to the LLC for any benefit, and hold as trustee for it any profits derived by the member without the consent of the other members from any transaction connected with the formation, conduct, or liquidation of the LLC or from any use by the member of its property including, but not limited to, confidential or proprietary information of the LLC or other matters entrusted to the member as a result of such person's status as a member.

> (b) STANDARD OF CONDUCT. A member of a member-managed LLC shall discharge such member's duties as a member, including all duties as a member of a committee:

> (1) In good faith;

> (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

> (3) In a manner the member reasonably believes to be in the best interest of the LLC.

*Id*.

The rule of statutory construction to which all others must yield is that the intention of the legislature must prevail. *Mangrum v. Owens*, 917 S.W.2d 244, 246 (Tenn. Ct. App. 1995)(citing *Plough, Inc. v. Premier Pneumatics, Inc.*, 660 S.W.2d 495, 498 (Tenn. Ct. App. 1983); *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn. Ct. App. 1978)). "[L]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Mangrum v.* Owens, 917 S.W.2d at 246; (quoting *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977)). The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. *Id*. (citing *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983); *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975).

The statute in question defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members. We cannot contravene the intent of the Legislature. Therefore, we find that the trial court correctly dismissed the plaintiff's cause of action for breach of fiduciary duty.

## CIVIL CONSPIRACY AND UNFAIR COMPETITION

The plaintiff argues that the trial court erred in dismissing the plaintiff's causes of action for civil conspiracy and unfair competition because those claims were not plead with specificity in the plaintiff's amended complaint. We disagree. Tennessee law provides that "[d]ismissal under Tenn.R.Civ.P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity." *421 Corp. v. Metropolitan Gov't. of Nashville & Davidson County*, 36 S.W.3d 469, 479 (Tenn. Ct. App. 2000)(citing *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)). The plaintiff's only mention of conspiracy and unfair competition appears in the amended complaint as follows:

> 85. Plaintiff further alleges that the acts of IEI and the other Defendants set forth herein constitutes breach of contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unfair competition and *conspiracy*. (Emphasis added).

However, the plaintiff provided no facts upon which the causes of action for civil conspiracy and unfair competition are based. As to civil conspiracy, this Court has stated that "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Haynes v. Harris*, No. 01A01-9810-CV-00518, 1999 WL 317946 at **2 (Tenn. Ct. App. 1999)(citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). Furthermore, this Court has recognized that although "the adoption of the Tennessee Rules of Civil Procedure greatly relaxed the requirements as to pleadings, pleading of some facts giving rise to a claim for relief is still a necessary requirement." *Jasper Engine & Transmission Exch. v. Mills*, 911 S.W.2d 719, 720 (Tenn. Ct. App. 1995)(citing *W & O Constr. Co. v. City of Smithville*, 557 S.W.2d 920 (Tenn. 1997)).

Therefore, we find that the trial court correctly dismissed the plaintiff's causes of action for civil conspiracy and unfair competition.

## FRAUD AND MISREPRESENTATION

The plaintiff argues that the trial court erred in dismissing the plaintiff's claim for fraud and misrepresentation because the plaintiff either had no standing to bring a derivative claim or the plaintiff's injury arose from a contractual relationship; not rising to the level of fraud or misrepresentation. We disagree. As the trial court pointed out, "the plaintiff alleges that certain information was withheld from him – either intentionally or negligently – and that this information

-20-

was material in the manner by which he conducted the affairs of the LLC. Plaintiff does not allege that he conducted his own personal affairs in reliance upon any such material information or that he obligated himself personally in reliance thereon." Plaintiff's amended complaint provides in pertinent part:

> 94. The Plaintiff was relying on statements of employees of IEI to conduct the affairs of MBF&I and these material omissions caused Plaintiff to act in a manner that he otherwise would if he had known the true state of affairs thereby damaging him and the LLC.

The plaintiff has, in essence, alleged a derivative claim, but at this point has no standing to bring such a claim. In ***Bourne v. Williams***, 633 S.W.2d 469 (Tenn. Ct. App. 1981), Judge Tomlin of this Court said:

> It has long been recognized that where a wrong to the corporation was claimed by a stockholder, if the board of directors of the corporation did not take steps to rectify the wrong, then a stockholder could bring the action in the name of the corporation, for the benefit of the corporation. This is the gravamen of a "derivative" suit. 13 Fletcher, Cyc. Corp. sec. 5908 (perm. ed. 1980). ***See also Opportunity Christian Church v. Washington Water Power Co.***, 136 Wash. 116, 238 P. 641 (1925).

***Bourne v. Williams***, 633 S.W.2d at 471. However, the plaintiff has not proceeded in this manner. Furthermore, the plaintiff's amended complaint also alleges a personal injury as a result of certain information being withheld from him. The plaintiff's personal injury is, in essence, the plaintiff's termination from employment with MBF&I. However, as the trial court noted, "that claim arises out of the employment relationship and does not create a cause of action for fraud or misrepresentation."

Therefore, we find that the trial court correctly dismissed the plaintiff's cause of action for fraud and misrepresentation.

We will now address the appellant's second main issue.

The plaintiff argues that the trial court erred in granting summary judgment to the defendants on the plaintiff's claim for breach of contract. The plaintiff argues that the defendants wrongfully terminated plaintiff's employment with MBF&I because defendants terminated plaintiff without cause, without providing notice of fifteen days, and without a meeting. We disagree. We have reviewed the record and agree with the trial court that the plaintiff was an employee-at-will because "there is no provision in the Operating Agreement which guarantees Plaintiff, or any other Member/Employee, a specific term or duration of employment. There also is no provision in the Operating Agreement, or any other agreement in the record, which provides that Plaintiff could be terminated only for cause."

We also note that the plaintiff was provided written notice of his termination dated December 31, 1998, and that the "Employment & Non-Solicitation Agreement" signed by the plaintiff provides in pertinent part:

> 1. **Term**. This amended employment agreement is effective as of January 01, 1998, and shall supersede any prior employment agreements between Employee and MBF&I, written or oral, in all respects. The new term of employment is for an indefinite term commencing the effective date of this agreement stated immediately above (the "Term"). This agreement shall continue indefinitely at the will of either party unless and until terminated by either party upon no less than 15 days notice unless for good cause in which event termination by either party may be immediately.

Furthermore, §6.4 of the Operating Agreement provides the following under the heading "Action Without a Meeting":

> Action required or permitted to be taken at a meeting of the Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by the Members holding a majority of the Membership voting power entitled to vote (or any greater proportion required by this Agreement, the Articles, or the Act) and delivered to the Secretary of the Company for filing with the Company records.

The plaintiff argues that the trial court erred in dismissing plaintiff's claim for breach of contract based on an alleged conflict of interest in violation of the Operating Agreement. We disagree. As the trial court correctly pointed out, the Plaintiff abandoned this issue because he did not oppose this issue in his response to defendants' motion for summary judgment. The Tennessee Rules of Civil Procedure provide in pertinent part:

> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant . . . .

Tenn. R. Civ. P. 56.03. As a general rule, questions not raised in the trial court will not be entertained on appeal. *See Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *see also City of Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687, 691 (Tenn. Ct. App. 1993).

Therefore, after a review of the record, we find that the trial court correctly granted summary judgment as to the plaintiff's breach of contract claim to the extent that plaintiff was wrongfully terminated. However, we find that there is a genuine issue of material fact as to whether there was

cause to terminate the plaintiff. This must be determined in order to properly value any interest the plaintiff has in his former company.

The Operating Agreement provides in pertinent part:

> 10.4 ***Option to Purchase Upon Termination of Employment.*** In the event that the employment of any Member who is a full-time employee of the Company is terminated, the Company shall have the option to purchase the Membership Interest of the terminated Member for the Formula Value (as defined in (e) below) of the terminated Member's Membership Interest (as shown on the books of the Company as at the end of the month in which the event occurs which gives rise to the Company's option), all in accordance with the following terms and conditions:

> \* \* \*

> (e) ***Formula Value.*** The "Formula Value" of a Member's Membership Interest shall mean the greater of (i) or (ii) below; provided, however, that in the event the Member's employment is terminated for "Cause" (as hereinafter defined), the "Formula Value" of such Member's Membership Interest shall mean the lesser of (i) or (ii) below:

>> (i) the amount of the capital account attributable to that Membership Interest; or

>> (ii) three times the average of the amount of income allocated or allocable to that Membership Interest (under Section 4.1 (a)) during each of the three preceding 12 month periods (or, if less than 36 months, such shorter period during which such Member had such Membership Interest).

> (f) ***Definition of Cause.*** Only for purposes of this Section 10.4 and Section 5.4 hereof, "Cause" shall mean any act that is materially inimical to the best

interests of the Company and that constitutes on the part of the Member personal dishonesty, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, or willful violation of any law, governmental rule or regulation.

The plaintiff also argues that the trial court erred in dismissing the plaintiff's action for breach of the covenant of good faith and fair dealing because the performance of a contract according to its terms cannot be characterized as bad faith. We disagree. There is no implied covenant of good faith and fair dealing in an employee-at-will contract. *See Randolph v. Dominion Bank of Middle Tennessee*, 826 S.W.2d at 479 (citing *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395 (Tenn. Ct. App. 1981)). Therefore, the trial court correctly dismissed the plaintiff's action for breach of the covenant of good faith and fair dealing.

In the final analysis, this case boils down to a rather uncomplicated dispute controlled by the employment contract and the Operating Agreement. As noted, the employment contract creates an employment at will which can be terminated without cause. The Operating Agreement allows the LLC to purchase the membership interest of a terminated employee. The only issue involved is whether termination of the employment was for cause. This issue is only material to decide the value of the membership interest of the terminated employee.

Accordingly, the trial court's order granting summary judgment to defendant, David Ingram, is affirmed. The trial court's order granting the defendants' motion for judgment on the pleadings is affirmed. The trial court's order granting the defendants' motion for summary judgment on the breach of contract claim and breach of contract of good faith and fair dealing claim is modified to grant partial summary judgment to the defendants on the issue as to whether plaintiff's employment and membership were legally terminated. The case is remanded to the trial court for a determination of whether plaintiff's employment termination was with or without cause and to determine the proper amount due to the plaintiff pursuant to the Operating Agreement. The trial court's order granting defendants' discretionary costs is reversed to be reconsidered by the trial court in light of the further proceedings required. Costs of the appeal are assessed one-half to plaintiff, Patrick McGee, and one-half to defendants, Timothy Best, Robert Frank, and Ingram Entertainment, Inc.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.